[No. A065051. First Dist., Div. Four. Nov. 21, 1994.]

THE PEOPLE, Plaintiff and Respondent, v.
CLARENCE JOHNSON, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II.B.

**COUNSEL**

Alan S. Yockelson, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Ronald S. Matthias and Jeremy Friedlander, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**ANDERSON, P. J.**—On the evening of August 21, 1993, Clarence Johnson (appellant) drove his car under the influence of alcohol. At one point that evening, he drove over the center line on the Silverado Trail in Calistoga (Napa County) and struck a car driven by Walter Dominguez, killing Dominguez. Appellant was convicted by a jury of the second degree murder of Dominguez. He was sentenced to a term of 15 years to life in state prison and was ordered to pay a restitution fine of $10,000. Appellant asserts that the trial court committed reversible error in permitting the prosecution to introduce evidence that he had been convicted of drunk driving four times

between 1973 and 1984. He also contends that the trial court erred in imposing the restitution fine without determining whether or not appellant had the ability to pay it. We affirm the conviction and remand for further proceedings in connection with the restitution fine.

## I. FACTUAL BACKGROUND

### A. *Appellant's Actions on the Evening of August 21, 1993*

Appellant arrived at the Triple S Ranch restaurant about 5:30 p.m. and left between one and two hours later. During that time Lynn Clare Parkening, the bartender, served him two martinis. When appellant asked for a third, Parkening refused because "I figured he had enough." When appellant was ready to leave, Parkening offered to find him a ride home, but appellant replied that he "wasn't interested."

Robert McCoy, a friend of appellant's for about 22 years, arrived at the Triple S Ranch around 7 p.m. and saw appellant sitting at the bar, drinking a martini. When McCoy saw appellant start to leave, he went outside to see if appellant was all right and to suggest that he go back inside and have dinner. McCoy suggested that his son could then drive appellant home. Appellant was somewhat "perturbed" because McCoy was "delaying" him. In McCoy's judgment, appellant was carrying himself well, but McCoy was concerned because it was unusual for appellant to drink a martini. Appellant left the Triple S Ranch around 7:20 p.m.

Sadek Schweiky, an employee of the Cinnabar restaurant in Calistoga (roughly a 15-minute drive from the Triple S Ranch), saw a white car (appellant's) parked on the street in front of the Cinnabar at approximately 8:30 p.m. with an older man in the left front seat. While Schweiky was watching, the car started up, "lunged real quickly clear across the other side of the street" and drove off, weaving from one lane to the other on Lincoln Avenue—a two-lane thoroughfare which is the main street of Calistoga.

Constance Sheehan, a visitor to Calistoga, saw appellant's car driving with no lights "fast"—around 40 to 45 miles an hour—and erratically down Lincoln. The car almost hit a young woman on Lincoln. David Wall, a Calistoga resident, saw the car heading east on Lincoln at a high rate of speed; he saw the car nearly strike a young man crossing Lincoln at an intersection. The young man had to jump out of the way, or he would have been hit by appellant's car.

A few moments later, Wall, who had also been driving east on Lincoln, turned onto Brannon Street and saw appellant's car "up against the park

bench on the sidewalk." Wall stopped his car and approached the vehicle. He saw appellant attempting to start it. Wall told appellant not to start it, but appellant slurred an obscenity and drove off. Appellant turned back onto Lincoln with no lights on, "weaving, erratically driving." (Appellant's car also knocked over a city sign on Brannon, as later determined by the Calistoga police.)

After proceeding east on Lincoln, appellant then failed to stop at the stop sign, turned south on the Silverado Trail, where he crossed over the center line (double yellows) and struck the vehicle driven by Dominguez head-on at a speed of between 40 and 45 miles per hour. Dominguez was killed as a result of the collision between the two vehicles. Blood was drawn from appellant at the Santa Rosa Memorial Hospital roughly two hours after the accident. The alcohol concentration of his blood was .20 percent.

B.  *Appellant's History of Drunk Driving*

Before permitting the prosecution to introduce evidence of appellant's history of alcohol-related offenses, the trial court conducted an Evidence Code section 402 hearing. The sole witness at the hearing was Daniel Hutton, a Napa County probation officer. Hutton testified about appellant's lengthy history of alcohol-related offenses beginning in 1969. At the conclusion of the Evidence Code section 402 hearing, the court determined that it would only allow testimony about (a) appellant's drunk driving convictions and (b) a public drunkenness conviction in the mid-1980's as a result of which appellant had been required to (and did, in fact) attend 10 sessions of Alcoholics Anonymous.

Accordingly, Hutton testified before the jury as follows: appellant was convicted of driving under the influence in 1973. Appellant was convicted of driving under the influence with a prior conviction in 1977. In 1980 appellant was placed on formal probation for driving under the influence with a prior conviction. As a condition of probation, appellant was ordered to enroll in and complete a one-year "SB38" drinking driver program.[1] In 1981 probation was revoked and then reinstated with all original terms and conditions due to appellant's failure to report to his probation officer and pay a restitution fine of $250. In April 1981 probation for the 1980 offense was converted from formal to summary. The file kept on appellant by the probation department did not reflect whether or not appellant had in fact enrolled in or completed the "SB38" program.

---

[1]Hutton testified that such a program provides education and counseling about the problems of drinking and "how [the] intake of alcohol can affect [one's] ability to drive . . . ." Hutton also indicated that a program participant learns about "the risks associated with drinking too much and driving."

In 1984 appellant was again convicted of driving under the influence and was granted probation. In 1987 appellant was convicted of an "alcohol related criminal offense" and was ordered as a condition of probation to attend 10 sessions of Alcoholics Anonymous—a condition he eventually fulfilled.

## II. ANALYSIS

### A. *The Trial Court Did Not Err in Admitting Evidence of Appellant's Drunk-driving Convictions*

In *People* v. *Watson* (1981) 30 Cal.3d 290, 296 [179 Cal.Rptr. 43, 637 P.2d 279], the Supreme Court examined the differences between the mental states required to establish vehicular manslaughter under (then) Penal Code section 192, subdivision 3(a)—the killing of a human being while driving under the influence and with gross negligence—and murder in the second degree—killing of a human being with implied malice (Pen. Code, §§ 187 and 188). The *Watson* court first noted that implied malice "contemplates a subjective awareness of a higher degree of risk than does gross negligence, and involves an element of wantonness which is absent in gross negligence. [Citation.]" (*People* v. *Watson, supra,* at p. 296.) The court went on to note that ". . . a finding of implied malice depends upon a determination that the defendant *actually appreciated* the risk involved, i.e., a *subjective* standard. [Citation.]" (*Id.,* at pp. 296-297, italics in original.)

Appellant's principal assertion in the case at hand is that the evidence of his prior drunk-driving convictions was not "substantially relevant to prove his actual [subjective] knowledge of the great risk to human life from driving under the influence but [was] highly prejudicial on the critical issue of mental state differentiating implied malice from gross negligence." Appellant argues that it was error to admit evidence of the convictions for drunk driving when there was "*no evidence presented that* [*he*] *actually attended* [a program in which he received detailed information about the special risks to others associated with driving while intoxicated.]" (Italics in original.) Appellant's arguments lack factual and legal merit.

First, from a factual standpoint, appellant mischaracterizes the record. While it is true that the probation department records did not establish conclusively that appellant had participated in an "SB38" program, there was evidence presented that he was ordered to participate in the program as a condition of probation and that the probation was originally formal (supervised by a probation officer). Additional evidence was presented that, when appellant violated the terms of his (formal) probation, probation was initially

revoked, then reinstated with the provision that it would be converted from formal to summary (unsupervised) upon satisfaction of "all conditions of probation." Later on in 1981, appellant's probation was converted from formal to summary. Thus, there was substantial evidence introduced from which it could (can) be inferred that appellant satisfied the conditions of his probation, i.e., that he enrolled in and completed the "SB38" program.

Although appellant's entire legal argument appears to be based on the erroneous factual predicate noted above, we nonetheless note the following: while appellant correctly asserts that what is admissible, when a defendant is charged with second degree murder under circumstances similar to those in the case at hand, is evidence which serves to establish that he or she actually (subjectively) appreciated the risk to others associated with driving while intoxicated, appellant has failed to establish that evidence of previous drunk driving convictions alone (in the absence of proof of participation in a drinking driver program in association with those convictions) is inadmissible to establish that he or she subjectively appreciated those risks.

Appellant has cited six cases decided since *Watson* in which a trial court has admitted evidence of a defendant's previous convictions for driving under the influence and his participation in a drinking (or impaired) driver program.[2] In each case cited by appellant, the trial court's determination was upheld on appeal. In two of those cases, the defendant specifically challenged the admissibility of previous convictions to establish subjective awareness of the dangers of driving under the influence. In *People* v. *McCarnes, supra*, 179 Cal.App.3d at page 532, the court noted the following: "Defendant also contends that his previous convictions for driving under the influence were not probative on the knowledge element of implied malice, because the convictions showed only that he knew such driving was *unlawful*, but not that he knew it was *dangerous*. However, the reason that driving under the influence is unlawful is *because* it is dangerous, and to ignore that basic proposition, particularly in the context of an offense for which the punishment for repeat offenders is more severe [citation], is to make a mockery of the legal system as well as the deaths of thousands each year who are innocent victims of drunken drivers." (Italics in original.)

In *People* v. *Brogna, supra*, 202 Cal.App.3d 700, the defendant challenged the decision in *McCarnes*, arguing that it was inconsistent with *Watson*. The

[2]The cases cited by appellant are: *People* v. *McCarnes* (1986) 179 Cal.App.3d 525 [224 Cal.Rptr. 846]; *People* v. *Brogna* (1988) 202 Cal.App.3d 700 [248 Cal.Rptr. 761]; *People* v. *Murray* (1990) 225 Cal.App.3d 734 [275 Cal.Rptr. 498]; *People* v. *David* (1991) 230 Cal.App.3d 1109 [281 Cal.Rptr. 656]; *People* v. *Talamantes* (1992) 11 Cal.App.4th 968 [14 Cal.Rptr.2d 311]; and *People* v. *Whitfield* (1994) 7 Cal.4th 437 [27 Cal.Rptr.2d 858, 868 P.2d 272].

*Brogna* court rejected that argument and supported the decision in *McCarnes*. (*People* v. *Brogna, supra*, 202 Cal.App.3d at p. 709.)

We agree with the Courts of Appeal in *McCarnes* and *Brogna*. While a defendant's conviction for drunk driving, coupled with participation in a drinking driver program, may, arguably, be more probative than a conviction without such participation on the issue of a defendant's subjective awareness of the risks of drunk driving, a conviction alone *is* probative on that issue and, thus, is admissible.

In sum, we find no error in the trial court's admission of evidence of appellant's prior convictions for drunk driving.[3]

B. *The Restitution Fine*[4]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

The judgment of conviction is affirmed. The sentence imposed is also affirmed, except as to the restitution fine. As to that aspect of the sentence, the matter is remanded for hearing by the trial court as described herein.

Perley, J., and Reardon, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 22, 1995.

---

[3]At trial appellant also sought exclusion of prior convictions under Evidence Code section 352. On appeal appellant presents his Evidence Code section 352 argument in the same context as his broader argument that evidence of the prior convictions is not probative on the issue of implied malice. Because we find that evidence of the prior convictions here was highly probative on that issue, we reject appellant's claim that the trial court abused its discretion in failing to exclude such evidence under Evidence Code section 352. In making that determination, we align ourselves with *People* v. *McCarnes, supra,* 179 Cal.App.3d at pages 532-533.

[4]See footnote *ante*, page 286.