[No. B082559. Second Dist., Div. Four. June 30, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
KENNETH AUTRY, Defendant and Appellant.

## Counsel

Cynthia L. Barnes, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Kenneth C. Byrne and Emilio E. Varanini IV, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**VOGEL (C. S.), J.**—With a blood-alcohol level of .22 percent, defendant and appellant Kenneth Autry recklessly drove on a freeway, swerved into the median strip, struck and killed two highway construction workers, and injured his two passengers. A jury convicted appellant of two counts of second degree murder (*People* v. *Watson* (1991) 30 Cal.3d 290 [179 Cal.Rptr. 43, 637 P.2d 279]) and two counts of driving with a blood-alcohol content of .08 percent or more, causing bodily injury. (Veh. Code, § 23153, subd. (b).) The court sentenced appellant to state prison for three years plus two concurrent terms of fifteen years to life.

### Facts

Appellant had four prior convictions for drunk driving, suffered in 1983, 1984, and 1991. He failed to attend court-ordered educational programs in connection with those convictions, but in 1991 admitted that he had a drinking problem and participated in a 45-day residential alcoholism program at "How House," where participants are "bombarded" with horror stories about the dangers of driving while intoxicated. In October 1991, his probation officer told him he should not drink and drive because he might kill someone or be killed, and leave his children without a parent. On April 27, 1992, the day of the fatal accident, appellant was on probation for a different offense. That very morning, he met with his probation officer who warned him not to drink and drive.

Nevertheless, that day appellant drove his Ford Bronco to the desert where he and his friend Richard Bonato, and Bonato's friend Lester Lonian, drank beer. Appellant drove them to Bonato's aunt's house in Apple Valley and drank more beer. They decided to drive to Los Angeles. Appellant stopped to buy a case of beer. Appellant drank more than two beers while driving.

At the transition from interstate 15 to interstate 10, appellant, who by then appeared under the influence, lost control, swerved and skidded because he

was going too fast, about 70 or 80 miles per hour. Lonian told appellant to slow down; appellant told him to shut up. Twice Bonato asked to let him drive; twice appellant told him to shut up. Appellant almost hit a car. He pulled over and stopped. Bonato asked to drive; Lonian said, "Yeah . . . let him drive, . . . you are buzzing." Appellant refused, saying "I got it under control" and resumed driving. While driving on interstate 10, appellant resumed speeding and swerving. Bonato and Lonian told appellant three or four times to slow down; appellant told them to kick back and shut up.

Near downtown Los Angeles, appellant missed a freeway turn and got off the freeway. As he exited, he ran a red light and was nearly broadsided by a big rig truck. Bonato and Lonian again urged that Bonato drive; appellant told them, "later."

Appellant drove southbound on the Long Beach Freeway at 80 to 85 miles per hour. Lonian told appellant to "slow down, [I don't] want to die"; appellant said "Fuck off." At Lonian's urging, Bonato climbed into the backseat with Lonian and fastened his seat belt.

The accident occurred about 6:30 p.m., near the Rosecrans overpass. There a private highway construction contractor, MCM Construction, had a warning sign truck stopped in the median, with a flashing arrow indicating traffic should move to the right for construction ahead. The warning sign truck was entirely within the wide median, not blocking the fast lane, because the actual lane takeover would not occur for another mile, after two more warning signs. This was the first of such warning signs. Several motorists testified at trial that although the warning sign truck was beyond the overpass, they had no difficulty seeing it well before reaching the overpass.

About two minutes before the accident, appellant nearly struck the car of Carolyn Fraser when he moved into her lane. He appeared to be laughing and talking to his passengers. After Fraser moved so as to be behind appellant's car, she saw the warning sign. Bonato, in appellant's car, also saw it and warned appellant he had better move over. Appellant had no room to move to the right. Appellant was going faster than the car in front of him. Apparently in order to avoid hitting the car in front of him, appellant veered to the left, into the median strip.

Two highway construction workers, Armando Rentoria and Antonio Fernandez, were standing at the rear of the warning sign truck, between the truck and the center divider. Appellant's car struck the workers and the warning sign truck, knocking it into traffic. Appellant's car struck the center

divider and flipped over in the air, coming to rest facing the opposite direction. As a result of the accident, Rentoria died instantly and Fernandez died later that night; Lonian received head and back injuries, and Bonato received severe back and internal injuries.

Appellant, although bleeding, got out of his car and moved beer cans into a cooler. Appellant shook the dead body of Rentoria and told the unconscious Fernandez to get up and show he was all right. Appellant resisted instructions of Highway Patrol officers to sit down. Arrested and taken to a hospital, appellant had a blood-alcohol level of .22 percent. After falling asleep and waking up handcuffed to a hospital bed and being told he was under arrest for killing two people, appellant said, "Fuck 'em. They shouldn't have been out there in the first place."

*Defense*

Appellant's defense was to blame the construction company for not taking stronger precautions to protect its workers from such an accident.

Appellant presented evidence that when highway maintenance is performed by workers of the California Department of Transportation (CALTRANS), policy requires that a "shadow vehicle" known as an "attenuator truck" follow behind the workers. This equipment consists of a large, e.g., two-ton, truck with a cushion attached to its rear. It follows a reasonable distance behind the workers, where traffic might first begin to slow in response to conditions ahead. The idea is that if a vehicle veers into the area where the workers are, it will strike the cushioned attenuator truck, which will absorb the collision and possibly prevent the workers or other CALTRANS vehicles from being struck. This is expensive equipment, required for CALTRANS but not usually seen in private construction. There was a dispute at trial whether the CALTRANS policy applied to work performed by contract with CALTRANS, or otherwise established a safety standard of the industry. It was undisputed that MCM Construction did not have such equipment. Appellant's expert opined that the use of an attenuator truck would have saved the victims in this case. A rebuttal expert for the prosecution opined that it would have made no difference because appellant would have gone in front of it.

Appellant's experts also criticized placing the warning sign truck near a curve and beyond the overpass, making it more difficult to see from a long distance.

## CONTENTIONS

Appellant contends: (1) the evidence is insufficient to support the convictions of second degree murder; (2) the court abused its discretion under

Evidence Code section 352 in admitting evidence of statements of appellant's probation officers; and (3) the court erred regarding jury instructions on appellant's defense of superseding cause. The Attorney General raises a sentencing error regarding custody credit. Finding no merit to appellant's contentions, we modify the judgment and affirm.

## SUFFICIENCY OF EVIDENCE

■ Appellant contends the evidence is insufficient to support conviction of two counts of second degree murder. ■ We review this contention under the usual standard of the substantial evidence rule, resolving all conflicts in evidence and questions of credibility in favor of the verdict, and indulging every reasonable inference the jury could draw from the evidence. (*People* v. *David* (1991) 230 Cal.App.3d 1109, 1114, 1116 [281 Cal.Rptr. 656].)

■ In *People* v. *Watson, supra,* 30 Cal.3d 290, the Supreme Court held that in appropriate circumstances a homicide caused by a drunk driver may be prosecuted as second degree murder. Second degree murder based on implied malice is shown when the defendant deliberately performed an act, the natural consequences of which are dangerous to life, knowing that the conduct endangers the life of another, but acting with conscious disregard for that risk of life. (*Id.* at pp. 296, 300.) Implied malice requires that the accused actually appreciated the risk involved. (*Id.* at pp. 296-297.)

Since *Watson,* numerous cases have upheld drunk driving murder convictions. (*People* v. *Olivas* (1985) 172 Cal.App.3d 984 [218 Cal.Rptr. 567]; *People* v. *Albright* (1985) 173 Cal.App.3d 883 [219 Cal.Rptr. 334]; *People* v. *McCarnes* (1986) 179 Cal.App.3d 525 [224 Cal.Rptr. 846]; *People* v. *Brogna* (1988) 202 Cal.App.3d 700 [248 Cal.Rptr. 761]; *People* v. *Murray* (1990) 225 Cal.App.3d 734 [275 Cal.Rptr. 498]; *People* v. *David, supra,* 230 Cal.App.3d 1109.) As recently summarized in *People* v. *Talamantes* (1992) 11 Cal.App.4th 968, 973 [14 Cal.Rptr.2d 311], these cases have relied on some or all of the following factors in upholding such convictions: (1) blood-alcohol level above the .08 percent legal limit; (2) a predrinking intent to drive; (3) knowledge of the hazards of driving while intoxicated; and (4) highly dangerous driving. As in *Talamantes,* all four factors are present here, and appellant "cites no case where a drunk-driving-murder conviction has been reversed for insufficient evidence." (*Ibid.*)

Appellant drove with a blood-alcohol level of .22 percent. Throughout the day, appellant drove and drank, drove to different locations and drank, drove to obtain more alcohol, and drank while driving. Appellant was speeding,

swerving out of control, and had three near misses. He pulled over once and exited the freeway another time, but both times resumed driving despite the entreaties of his passengers.

 Appellant's main attack on the sufficiency of evidence concerns his subjective awareness of the life-threatening consequences of his driving while intoxicated. Appellant distinguishes cases which rely upon a defendant's prior exposure, upon previous drunk driving convictions, to mandatory educational programs on the dangers of drunk driving. Appellant points out that upon his prior convictions, he failed to attend the educational programs and merely served jail time. This distinction is not significant, however. First, appellant had four prior convictions of drunk driving. The jury could reasonably infer that the convictions alone, even without the educational programs, impressed upon appellant the dangers of drunk driving. (*People* v. *Johnson* (1994) 30 Cal.App.4th 286, 291-292 [36 Cal.Rptr.2d 4].) Second, appellant did enter the How House residential program. There was evidence that its residents were *constantly* "bombarded" with horror stories of the dangers and consequences of drunk driving. Finally, any weakness in appellant's prior formal education pales into insignificance in light of the graphic evidence from appellant's passengers, who desperately warned appellant, at the very time of driving, that appellant was driving dangerously and should let Bonato drive because they did not want to be killed.

Appellant argues the accident occurred in an area of decreased visibility and a blind curve. The jury was entitled to discount the significance of this, in light of testimony of other motorists that the sign was clearly visible from a distance and that traffic was able to continue without incident.

Substantial evidence supports the verdict.

### ADMISSIBILITY OF PROBATION OFFICER EVIDENCE

 Prior to trial, appellant moved under Evidence Code section 352 to exclude testimony by probation officers James Jenkins and Grace Pride. Appellant's primary point was that, as to Jenkins, appellant was on probation for a theft offense, not a drunk driving offense. Appellant contended that drunk driving was not the primary focus of the Jenkins probation, and that the probative value of Jenkins's testimony was outweighed by the danger of prejudice the jury would wonder what other crimes appellant had committed. After the trial court overruled appellant's objection, the parties stipulated to the jury that appellant's probation was general (the crime was not disclosed) and did not have a primary focus on the dangers of drinking and driving.

Jenkins's testimony that he told appellant he should not drink and drive was highly probative because it occurred *the same day as the accident,* April

27, 1992. The express advice on the morning before the accident was a vivid *timely* reminder, probative of appellant's disregard of the risks.

Pride testified that during a home visit in October 1991, she told appellant, a single parent of two children, that he should not continue to drink and drive because "the consequence might be that he would kill another person or be killed himself and then leave his children without a parent at all." Appellant responded he intended to remain sober and be there for his children. This advice was highly probative because it expressly referred to the dangers of killing someone.

The trial court did not abuse its discretion in concluding the probative value of the testimony outweighed any potential prejudicial effect. (*People* v. *Johnson, supra*, 30 Cal.App.4th 286, 292, fn. 3; *People* v. *Brogna, supra*, 202 Cal.App.3d 700, 709-710.)

### INSTRUCTIONS ON INTERVENING CAUSE

Appellant contends the trial court gave confusing instructions on appellant's causation defense and erred in refusing appellant's requested instructions on intervening or superseding cause. Appellant's defense was based on the failure of the construction company to provide an attenuator truck which might have protected the victims from impact.

#### *Instructions Refused*

In criminal prosecutions, the contributing negligence of the victim or a third party does not relieve the criminal actor of liability, unless the victim's or third party's conduct was the *sole* or *superseding* cause of the death. (*People* v. *Pike* (1988) 197 Cal.App.3d 732, 748 [243 Cal.Rptr. 54]; *People* v. *Armitage* (1987) 194 Cal.App.3d 405, 420 [239 Cal.Rptr. 515].) Appellant argued to the jury that the failure of the construction company to protect its workers with an attenuator truck was such an intervening or superseding cause. Appellant requested three instructions on superseding or intervening cause, the refusal of which he assigns as error.[1] Appellant's contention lacks merit because the record does not support instructing on intervening or superseding cause. If the record contains no

---

[1]Appellant's requested instructions read:

"An intervening cause may or may not break the chain of causation from the original act and the victim's death. [¶] If the intervening cause is normal or reasonably foreseeable it is a dependent cause and does not relieve the defendant of liability. [¶] If the evidence raises a reasonable doubt as to whether an intervening cause was a normal and foreseeable result of

substantial evidence that the failure to provide an attenuator truck could be a superseding or intervening cause relieving appellant of responsibility for the deaths, appellant cannot have been prejudiced by the court's refusal to give appellant's requested instructions. (E.g., *People* v. *Roberts* (1992) 2 Cal.4th 271, 313 [826 P.2d 274, 6 Cal.Rptr.2d 276]; *People* v. *Funes* (1994) 23 Cal.App.4th 1506, 1524 [28 Cal.Rptr.2d 758].)

 In the normal meaning of the words, and as stated in appellant's own requested instructions, an "intervening" or "superseding" cause which relieves the criminal actor of responsibility is one which "breaks the chain of causation" *after* the defendant's *original* act. In the circumstances of this case, the preexisting failure to provide a barrier which would have prevented the effects of appellant's conduct cannot be an intervening or superseding cause, as a matter of law. The failure to provide an attenuator did not "break" the chain of causation; rather it was an *absence* of intervening force, which *failed to break* the chain of the natural and probable consequences of appellant's conduct. We find guidance in *People* v. *McGee* (1947) 31 Cal.2d 229, 243 [187 P.2d 706]. There the defendant shot the victim, who bled to death. The defendant offered to prove that the victim might have survived if the surgeon had not failed, for a 10-hour period, to control the hemorrhage. The Supreme Court held the delay in treatment could not be a superseding cause, as a matter of law. It said, "[D]efendant *cannot complain because no force intervened to save him from the natural consequences of his criminal act.* The factual situation is in legal effect the same, whether the victim of a wound bleeds to death because surgical attention is not available or because, although available, it is delayed by reason of the surgeon's gross neglect or incompetence. *The delay in treatment is not in fact an intervening force; it cannot in law amount to a supervening cause.*" (*Ibid.*, italics added.) Applying this reasoning to the instant case, appellant cannot complain that a third party failed to take steps which might have prevented the natural and probable consequences of appellant's conduct.

The Attorney General brings our attention to *People* v. *Glass* (1968) 266 Cal.App.2d 222 [71 Cal.Rptr. 858], which has a similar factual background but is legally distinguishable. The defendant was convicted of vehicular

---

the defendant's original act, then you must find that defendant's act was not the cause of death."

"An intervening act may be so disconnected and unforeseeable as to be a superceding [*sic*] cause. In such a case, the defendant's act will be a remote and not a proximate cause."

"An unforeseeable intervening cause which breaks the cahin [*sic*] of causation from the original act is itself regarded as the cause of the death and relieves the original actor of criminal liability. [¶] If the evidence raises a reasonable doubt as to whether the unsafe condition created by MCM Construction was not a normal and foreseeable result of defendant's original act, then you must find that defendant's act was not the cause of death and acquit him."

manslaughter, after striking two members of a repair crew repaving a portion of a street. There was evidence that no flagman was present warning of the repair work, which considerably narrowed the street, no speed reduction signs were posted, and no barricades were erected to direct traffic around the work. The defendant offered to prove that the absence of these safety measures fell below the applicable standard of care, so as to make the street a dangerous condition. The appellate court held the evidence should have been admitted because it was relevant to two issues: (1) punishment, because under the statute then in effect the jury could recommend confinement in county jail rather than state prison (*see People* v. *Ansbro* (1984) 153 Cal.App.3d 273, 278, & fn. 6 [200 Cal.Rptr. 210]), and (2) to prove that the unsafe condition of the road was the *sole* cause of the accident. (*People* v. *Glass, supra,* 266 Cal.App.2d at p. 226.) Neither of these issues is involved here. Appellant did not, and under the evidence could not, argue that the absence of an attenuator was the *sole* cause of the accident. Rather he contended, erroneously, that it was an *intervening or superseding* cause which relieved him of the consequences of his own conduct which caused the accident.

Therefore, appellant was not entitled to the instructions he requested on intervening or superseding cause.[2]

### *Instructions Given*

■ The trial court properly gave the general instruction on cause, CALJIC No. 3.40 (1992 rev.).[3] This revision has received judicial approval as correctly embodying the principles of *People* v. *Roberts, supra,* 2 Cal.4th

---

[2]Alternatively, appellant suffered no prejudice, because the trial court in fact gave an instruction on intervening cause, an error favorable to appellant. The prosecutor correctly argued to the court that no instruction on intervening cause was warranted, but the trial court overruled that objection. Under compulsion of that ruling, the prosecutor offered an instruction, which the trial court preferred over appellant's requested instructions. The prosecutor's special instruction read: "If an intervening cause is a normal and reasonably forseeable [*sic*] result of the defendant's original act, it will not relieve the defendant of liability. The consequences need not have been a strong probability, a possible consequence which might reasonably have been contemplated is enough. The precise consequence need not have been foreseen. It is enough that the defendant should have foreseen the possibility of some harm of the kind which might result from his act. [¶] If an intervening act is so disconnected and unforeseeable, the defendant's act will be considered remote. Thus, the defendant will be relieved of liability." Appellant's counsel used this instruction to make his point to the jury. In light of the instruction given, appellant fails to demonstrate prejudicial error. (*Soule* v. *General Motors Corp.* (1994) 8 Cal.4th 548, 572, 582 [34 Cal.Rptr.2d 607, 882 P.2d 298].)

[3]CALJIC No. 3.40 (1992 rev.) read: "To constitute the crimes charged there must be in addition to the injuries or deaths an unlawful act which was a cause of the injuries or deaths. [¶] The law has its own particular way of defining cause. A cause of the injuries or deaths is an act that sets in motion a chain of events that produces as a direct, natural and probable

271, 319, that the consequences of the defendant's act must be direct and not so remote as to fail to constitute natural and probable consequences. (*People v. Temple* (1993) 19 Cal.App.4th 1750, 1756 [24 Cal.Rptr.2d 228].)

The trial court properly gave CALJIC No. 3.41 (1992 rev.)[4] on more than one cause. Appellant contends, "In the present matter, no evidence of a concurrent cause was presented in either the defense or the prosecution case." To the contrary, appellant's contention that the absence of an attenuator contributed to the deaths amounted to a contention of more than one concurrent cause and justified this instruction. As discussed, *ante*, only by appellant's erroneous reasoning could the absence of an attenuator be called an "intervening" or "superseding" cause rather than a "concurrent" cause. Appellant's tactic is readily understandable, because a superseding cause would relieve him of responsibility whereas a concurrent cause would not. (*People v. Pike, supra*, 197 Cal.App.3d at p. 747.) But this does not permit labeling a concurrent cause as a superseding cause, when the evidence and the law will not support that characterization.[5]

Finally, appellant suggests that CALJIC No. 3.41 improperly lessened the prosecution's burden of proof, because it requires the defendant's conduct to be (merely) a "substantial factor" in bringing about the deaths, rather than requiring that the defendant's conduct cause the deaths as a direct, natural, and probable consequence. (*See People v. Pike, supra*, 197 Cal.App.3d at p. 747.) The latter part of the formula, however, was supplied by CALJIC No. 3.40 (fn. 3, *ante*), which correctly embodied the law. (*People v. Temple, supra*, 19 Cal.App.4th at p. 1756.) Taking the two instructions together as a whole, the jury was correctly instructed, and the prosecution's burden of proof was not lessened. Indeed, this is an independent reason there is no merit to appellant's contention that it was error to give both CALJIC Nos. 3.40 and 3.41 in the same case.

---

consequence of the act the injuries or deaths and without which the injuries or deaths would not occur."

[4]CALJIC No. 3.41 (1992 rev.) read: "There may be more than one cause of the injuries or deaths. When the conduct of two or more persons contributes concurrently as a cause of the injuries or deaths, the conduct of each is a cause of the injuries or deaths if that conduct was also a substantial factor contributing to the result. A cause is concurrent if it was operative at the moment of the injuries or deaths and acted with another cause to produce the injuries or deaths. [¶] If you find that the defendant's conduct was a cause of injuries or deaths to other persons, then it is no defense that the conduct of some other person, even the injured or deceased person, contributed to the injuries or deaths."

[5]There is an independent reason that the record supports instruction on concurrent causes under CALJIC No. 3.41. Appellant's expert suggested that another cause of the accident was placing the warning sign near a curve beyond an overpass, making it more difficult to see.

## CUSTODY CREDIT

■ The trial court awarded total custody credit of 969 days, consisting of 646 days actual custody and 323 days conduct credit. The Attorney General points out in the respondent's brief that appellant was entitled to only 322 days conduct credit.

Under Penal Code section 4019, two days of conduct credit is awarded for each increment of four days of actual custody; no conduct credit is awarded for increments of less than four days of actual custody. (*People* v. *Walkkein* (1993) 14 Cal.App.4th 1401, 1411 [18 Cal.Rptr.2d 383].) Dividing appellant's 646 days of actual custody by 4 yields only 161 full 4-day increments of custody; therefore, appellant was entitled to only 322 days conduct credit.

The trial court's computational error resulted in a sentence unauthorized by law, which is subject to correction on a defendant's appeal, even though brought to the court's attention by the respondent's brief and even though the correction increases the defendant's term in custody. (*People* v. *Guillen* (1994) 25 Cal.App.4th 756, 764 [31 Cal.Rptr.2d 653]; *People* v. *Francisco* (1994) 22 Cal.App.4th 1180, 1192-1193 [27 Cal.Rptr.2d 695]; *People* v. *Walkkein*, *supra*, 14 Cal.App.4th at p. 1411.)

## DISPOSITION

The judgment is modified to provide that the defendant has custody credit for 968 total days, including 322 days conduct credit. As so modified, the judgment is affirmed.

Epstein, Acting P. J., and Hastings, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 27, 1995.