[No. G017331. Fourth Dist., Div. Three. Dec. 17, 1996.]

THE PEOPLE, Plaintiff and Respondent, v.
BRANDON MATTHEW WATTIER, Defendant and Appellant.

**COUNSEL**

Gideon Margolis, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Holly D. Wilkens and Bradley A. Weinreb, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**SILLS, P. J.**—Brandon Matthew Wattier appeals the judgment sending him to prison for four years for vehicular manslaughter.[1] (See Pen. Code, § 192, subd. (c)(1).)[2] Wattier contends on appeal that the trial court erroneously excluded evidence of the victim's failure to use a seat belt and then erred by not instructing sua sponte on the lesser included offense of vehicular manslaughter without gross negligence. He also argues the court committed reversible error by ordering the jury to further deliberate after polling revealed that one juror expressed misgivings about the verdict. We affirm.

### FACTS

Wattier drove a white Mercury Merkur in the evening hours of October 9, 1993, in a dangerous and erratic fashion. He was speeding up to 85 miles an hour, darting between traffic without signaling and tailgating other motorists on the freeway. The traffic was busy and thick, but it still flowed at 65 miles an hour. The weather was clear and dry, and no obstructions existed on the road.

Wattier approached a red Forerunner, driven by Matthew Keene, zoomed in close and began flashing his lights at him. The traffic prevented Keene from moving immediately, and Wattier remained dangerously close to the Forerunner's rear. When Keene signaled to move into the right lane, Wattier did not remain in the lane to continue on, but mimicked the Forerunner's maneuver into the right lane. He then proceeded further onto the right shoulder, accelerated and tried to pass Keene on the right. Dust and dirt sprayed as the Mercury lost traction and began to pitch and swerve. Wattier tried to compensate by veering into Keene's lane, directly in front of the Forerunner. The Mercury, however, lost control as its tires met the asphalt, and careened into the lane to the left of the Forerunner, striking an Infiniti with such force that two of the Mercury's tires were lifted off the ground. The Infiniti whirled out of control, darted off onto the shoulder and flipped over. The eight-year-old boy in the front passenger seat was able to crawl to his father before he died of massive internal injuries. Wattier drove off without even slowing.

---

[1]Wattier also faced a felony hit-and-run charge, but the jury acquitted him of this offense, finding instead that he committed a misdemeanor hit-and-run under Vehicle Code section 20002, subdivision (a).

[2]Penal Code section 192 states, "Manslaughter is the unlawful killing of a human being without malice. It is of three kinds: [¶] . . . [¶] (c) Vehicular—[¶] (1) Except as provided in Section 191.5, driving a vehicle in the commission of an unlawful act, not amounting to felony, [in this case, in violation of Vehicle Code sections 21755 and 22350] and with gross negligence; or driving a vehicle in the commission of a lawful act which might produce death, in an unlawful manner, and with gross negligence."

Wattier was arrested a day later when he approached an acquaintance's business to repair the damage to his car. He had telephoned a friend who recommended a body repair shop in Yorba Linda; Wattier was arrested in the damaged car two blocks from that shop.

Wattier testified that it was Keene's rude driving that caused the collision, and that he was entirely unaware that he collided with anyone other than a possible slight touching of Keene's car. He drove away, assuming that Keene would follow him to the next exit where it would be safe to stop. He categorically denied ever hitting any other vehicle.

An expert from the California Highway Patrol testified that the accident was caused by the unsafe and erratic driving by Wattier, referring to the unsafe lane change and passing on the shoulder at such a dangerous speed. A defense accident reconstruction expert, Edward Giroux, testified that the manner in which the Infiniti left the road *suggested* that it was hit by some other vehicle as well.

DISCUSSION

I

*The Exclusion of Evidence of the Seat Belt*

The prosecution raised the motion to exclude any mention at trial that the little boy was not wearing a seat belt at the time of the collision. The defense objected, arguing that had the boy been properly belted, no death would have occurred. The court tentatively ruled that the evidence would not be admitted but gave the defense the opportunity to provide further authority if it so desired, at which time the court would reconsider the issue.

The issue was not waived by the defense's failure to present further authority as requested. Although in both *People* v. *Hunt* (1982) 133 Cal.App.3d 543 [184 Cal.Rptr. 197] and *People* v. *Coleman* (1970) 8 Cal.App.3d 722 [87 Cal.Rptr. 554], waiver was found from a party's failure to present authority for an objection, those cases are factually and legally distinguishable. There, the failure to articulate authority for an evidentiary objection was not the sole circumstance supporting the finding of waiver. In both those cases, the court's ruling was proper and its request was consistent with demanding an offer of proof, which the party then *chose* not to do.

Wattier's objection, on the other hand, is akin to that made in *People* v. *Jacobs* (1987) 195 Cal.App.3d 1636 [241 Cal.Rptr. 550]. There, counsel

properly posed an objection to the introduction of certain evidence, and did so in a manner which informed the court of the general ground for its exclusion. This adequately preserved the issue although the specific case authority for the objection was never cited. (See *Jacobs*, *supra*, 195 Cal.App.3d at pp. 1649-1650.) Likewise, here. Wattier objected to the prosecution's request for an *in limine* order excluding the evidence and argued that objection in a way that adequately informed the court as to his reasons. Moreover, as stated in *People* v. *Bruner* (1995) 9 Cal.4th 1178, 1183, footnote 5 [40 Cal.Rptr.2d 534, 892 P.2d 1277], an evidentiary issue should be addressed on appeal even if it was only marginally preserved when the question of its preservation "is close and difficult." Thus, the issue regarding exclusion of the seat belt material was not waived.

▮ The trial court was correct when it tentatively ruled to exclude the evidence. Facts attacking legal causation are only relevant if the defendant's act was *not* a substantial factor in producing the harm or injurious situation. (See *In re M.S.* (1995) 10 Cal.4th 698, 716-720 [42 Cal.Rptr.2d 355, 896 P.2d 1365].) The defendant is liable for a crime *irrespective* of other concurrent causes contributing to the harm (1 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988) Elements of Crime, § 128, pp. 146-147), and particularly when the contributing factor was a preexisting condition of the victim. A robber, for example, is guilty of felony murder if his victim is an obese person who dies of a heart attack within 20 minutes of a robbery. (E.g., *People* v. *Stamp* (1969) 2 Cal.App.3d 203, 210 [82 Cal.Rptr. 598].) It is irrelevant that a normally healthy individual might not have suffered such a reaction as long as the victim's preexisting condition is not the *only* cause of the ultimate harm. (See *People* v. *Autry* (1995) 37 Cal.App.4th 351, 360-361 [43 Cal.Rptr.2d 135].) Moreover, a superseding cause must break the chain of causation *after* the defendant's act before he or she is relieved of criminal liability for the resulting harm. In *Autry*, *supra*, 37 Cal.App.4th 351, the drunken defendant drove his car into two highway construction workers, killing them both. It was irrelevant to his criminal responsibility that the construction company could have provided an "attenuator truck" as a greater protection for its workers. "[T]he preexisting failure to provide a barrier which would have prevented the effects of appellant's conduct cannot be an intervening or superseding cause, as a matter of law. The failure to provide an attenuator [or, we would add, a safety belt barrier] did not 'break' the chain of causation; rather it was an *absence* of intervening force, which *failed to break* the chain of the natural and probable consequences of appellant's conduct. . . . '[D]efendant *cannot complain because no force intervened to save him from the natural consequences of his criminal act.* . . .' " (*Id.* at p. 361, original italics; see also *People* v. *Roberts* (1992) 2 Cal.4th 271, 311-313 & 315-322 [6 Cal.Rptr.2d 276, 826 P.2d 274]

[less-than-average medical care cannot break chain of causation for death from prison stabbing; but, if defendant stabs his victim, who then, in turn, stabs and kills an officer, the defendant is responsible for the officer's death *only if* his victim's lethal conduct was a foreseeable response to his original attack].)

Essentially, the defense attempts to inject concepts of causation from archaic civil law into the modern criminal law in order to get off scot-free. Relying on the theory of contributory negligence—a former defense in civil negligence actions—he desires to eliminate his responsibility for the harm that he caused, simply because the victim was not a perfect citizen. Prior to the decision in *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393], the contributory negligence of a plaintiff was a *complete* defense in a civil negligence action. (See 5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 1025, pp. 440-443.) But that defense was predicated on the theory that between two parties who *both* exhibited less than reasonable care, one party should not have to pay the other for injury or damages caused by them both. On the other hand, even under contributory negligence, the defendant who *wilfully* committed an act resulting in the harm to the plaintiff, could not call upon the victim's contributory negligence to eliminate his responsibility. (See 2 Witkin, Summary of California Law (7th ed.1960) Torts, § 327, pp. 1523-1524.)

The criminal law, however, *presupposes* mens rea—or a "guilty mind" —on the part of the defendant before his or her action can be considered criminal. (See 1 Witkin & Epstein, Cal. Criminal Law, *supra*, § 98, pp. 116-118 [of mens rea].) Wattier attempts to graft concepts of contributory negligence onto the criminal law without acknowledging the limitations imposed on the theory even in the civil arena.

In realistic terms, however, his desired revision must be rejected. A society cannot permit a defendant to escape responsibility for his or her criminal conduct simply because a victim was not "sufficiently" cautious or perfect. Otherwise, the system would essentially grant a "get-out-of-jail-free" card to any wrongdoer for having selected his victim judiciously. Do we really want to define burglary as a crime if the victim locks his or her doors, but not if little Herkemer left the back door unlatched? Or excuse the driver who "hits and runs" another car, simply because the other car's driver has no proof of insurance on him or her at the time?[3]

As the failure to use a seat belt was merely an absence of an intervening force which, at best, *might* have broken the chain of the natural and probable

---

[3]A. P. Herbert discussed this anomaly in his work, The Uncommon Law. As he said in the guise of "Mr. Justice Blackburn's memorable pronouncement, which has been set to music [in 'The Law Students' Glee Book']: . . . 'But for [the person's] act in bringing [the dangerous

consequences of Wattier's conduct, it was irrelevant to the ultimate issue of his criminal responsibility. Thus, the court's tentative ruling was proper.

## II

### *The Jury Polling*

Wattier contends the trial court erred when it instructed the jury to return to deliberations although it had provided a verdict. A single juror during polling stated that he voted for guilt but that he felt pressured to do so. Wattier characterizes this action as coercing a verdict. We disagree.

A trial court must determine whether a jury reached a unanimous agreement before it discharges the panel. (Pen. Code, §§ 1140, 1163-1164.) If during the polling any juror answers that the verdict is not his or her verdict, the jury *must* be returned to the jury room for further deliberations. (Pen. Code, § 1163.) In this case, the juror conceded that he voted for guilt but felt constrained to do so. Thus, it was left to the court's ascertainment whether the juror was disavowing the verdict. Here, the court concluded that the juror was indicating that the verdict was not his own, *requiring* the court to order further deliberations. (See *Chipman* v. *Superior Court* (1982) 131 Cal.App.3d 263, 266 [182 Cal.Rptr. 123].)

Wattier, however, contends the court improperly coerced the verdict that resulted from the further deliberations of 30 minutes' duration. Penal Code section 1163 mandates the court order further deliberation, and the court's decision must be upheld unless it is shown to be an abuse of discretion. (See *People* v. *Superior Court* (*Thomas*) (1967) 67 Cal.2d 929, 932-933 [64 Cal.Rptr. 327, 434 P.2d 623, 25 A.L.R.3d 1143].) Moreover, the court's instructions to the jury at the time of the order were entirely proper and not of the coercive character Wattier describes. The judge informed the jury it

---

item] there no mischief could have accrued; and it seems but just that he should at his peril keep it there, so that no mischief may accrue, or answer for the natural and anticipated consequence. And upon authority this we think is established to be the law, whether the things so brought be beasts or water, or filth or stenches.' [¶] 'Or motor-cars, Mr. Haddock adds. And we think he is right. Mr. Thwale's motor-car should in law be regarded as a wild beast; and the boast of its makers that it contains the concentrated power of forty-five horses makes the comparison just. . . . If Mr. Haddock had been manifestly lame no jury would have excused Mr. Thwale for knocking him down; but the motorist is no more entitled to murder a man with two legs than a man with one. . . . Mr. Thwale has brought on to his own property and allowed to escape from it on to the public highway, which in a sense is the property of Mr. Haddock, as of all the King's subjects, a dangerous instrument "which was not naturally there, harmless to others so long as it was confined to his own property, but which he knew would be mischievous if it got out. But for his act in bringing it there no mischief could have accrued, and it seems but just that he should at his peril keep it there." ' " (Herbert, The Uncommon Law (1969) pp. 126-127.)

was required to render a unanimous verdict, defined as one held by each individual juror. (See CALJIC Nos. 17.40, 17.41, as given.) Denmark, the juror in question, was directed personally *not* to acquiesce to the majority, but to make his own decision; and the panel as a whole was ordered "that the People and the Defendant are entitled to the individual opinion of each juror. [¶] Each of you must consider the evidence for the purpose of reaching a verdict *if you can do so.* [Italics added.] And each of you must decide the case for yourself, but you should only do so after discussing the evidence and instructions with the other jurors. . . ."[4] After 30 minutes of further deliberation, the jury returned with a unanimous verdict, which was recorded after a full, "individual and separate" polling. No abuse of discretion was shown here.

### III

*Sua Sponte Instruction*

■ Wattier argues the court erred by failing to instruct the jury on the elements of the lesser offense of vehicular manslaughter *without* gross negligence, a violation of Penal Code section 192, subdivision (c)(2). Although a trial court is required to instruct the jury on all pertinent legal issues raised by the evidence (see *People* v. *Edwards* (1985) 39 Cal.3d 107, 116 [216 Cal.Rptr. 397, 702 P.2d 555]), no obligation exists to instruct on the elements of a lesser offense when there is no substantial evidence from which a reasonable jury could conclude the lesser offense occurred. (*People* v. *Barton* (1995) 12 Cal.4th 186, 194-195 [47 Cal.Rptr.2d 569, 906 P.2d 531].) The evidence supporting such a theory that the boy's death was a product of simple negligence was Wattier's testimony that he did nothing more than simply violate the basic speed law, in conjunction with his expert's testimony that *another* vehicle must have hit the Infiniti, causing the serious injury. In other words, the accident could not have happened *at all* unless "some other dude did it." Although rather incredible, evidence existed supportive of this lesser offense. However, the error was clearly harmless because this defense was thoroughly rejected by the jury "under other, properly given instructions." (See *Edwards, supra,* 39 Cal.3d at pp. 116-117; see also *People* v. *Geiger* (1984) 35 Cal.3d 510, 532 [199 Cal.Rptr. 45, 674 P.2d 1303, 50 A.L.R.4th 1055].) Specifically, the court instructed the jury on the difference between gross and simple negligence. (CALJIC No. 3.36, as given.) Had the jurors believed an unknown driver collided with the Infiniti, they would have found only simple negligence existed, and acquitted Wattier of the greater charge. And they would have had to find that to convict

---

[4]Denmark stated in chambers that he felt the other jurors jumped to the conclusion of guilt without seriously considering the reasonable doubt standard of law.

Wattier of the lesser offense of vehicular manslaughter without gross negligence. The jury had to decide whether his conduct constituted gross or simple negligence before it could convict at all. This issue was necessarily resolved adversely to Wattier—factually and legally—and any instructional error was therefore harmless.

The judgment is affirmed.

Sonenshine, J., and Rylaarsdam, J., concurred.

A petition for a rehearing was denied January 7, 1997, and appellant's petition for review by the Supreme Court was denied March 26, 1997.