The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Anthony E. McAFEE, a/k/a McAfee E. Anthony, James Edwards, Anthony V. Johnson, Anthony E. MacFee, Anthony McAfee, Anthony E. McAfee, and Anthony Vance, Defendant–Appellant.

No. 00CA2379.

Colorado Court of Appeals, Div. I.

March 25, 2004.

Rehearing Denied Aug. 5, 2004.

Certiorari Denied Dec. 27, 2004.*

* Justice COATS does not participate.

Ken Salazar, Attorney General, Catherine P. Adkisson, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Betty Bass, Boulder, Colorado, for Defendant–Appellant.

Opinion by Judge TAUBMAN.

Defendant, Anthony E. McAfee, appeals from the judgment of conviction and sentences entered on a jury verdict finding him guilty of vehicular homicide, vehicular assault, and two counts of leaving the scene of an accident. We affirm.

Early one morning in 1999, defendant drove a car with two passengers head on into a telephone pole. The passenger in the front seat suffered two broken legs and head and internal injuries. The passenger in the back seat suffered massive injuries and died shortly after the accident.

Witnesses to the accident saw defendant exit the car, look at the damage, and tell one of the injured passengers to "get up" because they had to "get out of [t]here." Defendant told one bystander that "the driver ran." However, when he was confronted as the driver, defendant left the scene and got into a cab. When asked by the cab driver where he was going, he told the driver to "just go." Police caught up with the cab shortly thereafter.

Investigators found no indication that mechanical failure or external factors outside the car caused the crash. When defendant was taken to the police station, he was uncooperative and excited, yelled profanities, and refused to comply with verbal commands during a sobriety screening. Defendant's blood test for drugs revealed a cocaine metabolite known as benzoylecgonine, indicating that he had ingested cocaine within eighteen to twenty-four hours prior to the accident.

Defendant was convicted as charged and sentenced to forty-seven years in the Department of Corrections.

## I. Sufficiency of Evidence

■ Both the vehicular homicide and vehicular assault charges required the People to show that defendant was driving under the influence of alcohol or one or more drugs at the time of the accident. Sections 18–3–106(1)(b), 18–3–205(1)(b), C.R.S.2003. Defendant argues that these convictions should be vacated because there was insufficient evidence to support this element. Defendant bases his argument on the testimony of the People's medical expert that the presence of cocaine metabolites in defendant's blood did not indicate whether his ability to drive had been impaired by the drug. We are not persuaded.

■ When the sufficiency of the evidence is challenged on appeal, a reviewing court must determine whether the evidence, when viewed as a whole and in the light most favorable to the prosecution, is sufficient to support a conclusion by a reasonable person that the defendant is guilty of the crime charged beyond a reasonable doubt. *Kogan v. People*, 756 P.2d 945 (Colo.1988).

Here, the evidence, when viewed in the light most favorable to the prosecution, established that defendant was driving under the influence of cocaine. Evidence showed that he had admitted to fellow inmates that (1) he had been buying and smoking crack cocaine for several days prior to the accident, (2) he had partied throughout the night before the accident, and (3) at the time of the accident he was driving the car because he knew where to get more crack cocaine. The People offered expert testimony that defendant had ingested cocaine within eighteen to twenty-four hours before the accident and that the period after ingesting cocaine can be followed by fatigue, loss of motor skills, inattentiveness, paranoia, and hallucinations. After the accident, defendant was highly agitated and exhibited other behaviors that led police and other witnesses to believe he was under the influence of either drugs or alcohol.

Accordingly, we conclude sufficient evidence was presented at trial to support defendant's conviction of vehicular homicide and vehicular assault, and we will not disturb those convictions.

## II. Reliability of Drug Testing Evidence

■ Defendant asserts that the trial court should have granted his motion to dismiss because the tests performed on his blood were unreliable and, therefore, inadmissible. Specifically, defendant asserts that the trial court erred by not conducting a hearing regarding defendant's allegations that (1) the preservative used by police to test his blood contaminated the sample, and (2) the blood testing method used was not acceptable within the scientific community. We conclude that any error was harmless.

■ CRE 702 provides the appropriate standard for determining the admissibility of scientific evidence. *People v. Shreck*, 22 P.3d 68 (Colo.2001). CRE 702 states: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Under this standard, evidence is admissible when (1) the scientific principles at issue are reasonably reliable, (2) the witness is qualified to opine on such principles, and (3) the testimony will be useful to the jury. *People v. Shreck, supra*, 22 P.3d at 79.

Additionally, the trial court must consider whether the probative value of the evidence is substantially outweighed by its prejudicial effect pursuant to CRE 403, and a trial court's CRE 702 determination must be based upon specific findings. *People v. Shreck, supra*, 22 P.3d at 78.

We note that defendant did not question that the People's expert witness was qualified or that his testimony would assist the jury. We also note that, contrary to defendant's contention, *People v. Shreck, supra*, does not require the trial court to conduct a hearing to inquire into the reliability of the evidence. Because the record in this case is sufficient for a determination that the blood testing was reasonably reliable, we conclude that the trial court did not abuse its discretion in admitting the drug test evidence.

Here, in response to defendant's general allegations of unreliability, the People submitted an affidavit by Dr. James Ruth, who tested defendant's blood for drugs. The affidavit indicated that the screening and confirmation of the cocaine metabolite in defendant's blood were done in accordance with the regulations of the Colorado Department of Public Health and Environment. The People also indicated that defendant had been given a sample of his blood for independent testing.

At a hearing on defendant's motion to dismiss, defendant did not dispute the People's representation that while the preservatives added to the blood sample affected defendant's DNA, they did not affect the reliability of the testing for cocaine metabolites. Also, the court ordered the People to provide defendant's expert with any information necessary to verify the validity of the drug testing. Defendant does not assert, and there is no record evidence to suggest, that the People did not comply with this order. There is also no evidence that defendant submitted any reports, analysis, or expert testimony to support his allegations that the test results provided by the People were unreliable.

Moreover, Dr. Ruth testified at trial regarding the reliability of the procedure, personnel, and methodology for testing defendant's blood and was cross-examined by defense counsel.

Further, while we recognize that contrary to its assurances to defendant, the trial court did not issue a written order regarding its ruling from the bench, we find no basis for reversal here for insufficiency of the court's oral findings. The reliability of the methodology underlying drug testing evidence is well established in the record, and its helpfulness to the jury here is plain. *See People v. Johnson*, 74 P.3d 349 (Colo.App.2002)(trial court's failure to make specific findings on the reliability of battered woman syndrome evidence is harmless, because line of testimony is well accepted). Also, defendant does not allege that admission of the blood test evidence violated CRE 403.

Therefore, the trial court properly denied defendant's motion to dismiss and admitted the blood test evidence.

### III. Seatbelt Instruction

Defendant asserts that the trial court erred by refusing to instruct the jury that the victims' failure to wear seatbelts constituted gross negligence and was, therefore, an intervening cause of their injuries. We are not persuaded.

■ A defendant is responsible for the natural and probable consequences of an unlawful act. *People v. Saavedra–Rodriguez,* 971 P.2d 223 (Colo.1998). Thus, the contributory negligence of a victim is not a defense to vehicular homicide, absent a showing that the victim's conduct was an independent intervening cause of death. *People v. Dunhill,* 40 Colo.App. 137, 570 P.2d 1097 (1977). An intervening cause is one which the defendant could not foresee, *People v. Gentry,* 738 P.2d 1188 (Colo.1987), and must be more than a contributing cause of the injury. *Hamrick v. People,* 624 P.2d 1320 (Colo.1981).

■ A victim's simple negligence that contributes to an injury is foreseeable as a matter of law and cannot be an intervening cause. *People v. Gentry, supra.* However, gross negligence is unforeseeable, abnormal human behavior and may serve as an intervening cause. *People v. Calvaresi,* 188 Colo. 277, 534 P.2d 316 (1975). Further, the trial court must make the threshold determination whether there was sufficient evidence to submit an issue to the jury. *People v. Saavedra–Rodriguez, supra.*

A division of this court recently addressed a related issue in *People v. Lopez,* 97 P.3d 277, 2004 WL 439384 (Colo.App. No. 02CA0443, Mar. 11, 2004). In *Lopez,* the defendant abandoned his argument that the victim's failure to wear a seatbelt was an intervening cause of death. Nevertheless, he argued that the seatbelt evidence was admissible as to whether his conduct was the proximate cause of the victim's death. The *Lopez* division cited Colorado cases regarding proximate cause and three out-of-state cases holding that the failure to wear a seatbelt is not an intervening cause. The *Lopez* division

concluded that the failure to use a seatbelt was not a contributing factor in the collision of the two vehicles, and, thus, the trial court did not err in rejecting the evidence.

■ Here, the trial court admitted evidence that the victims were not wearing seatbelts, but refused to instruct the jury that such conduct constituted an intervening cause. Defendant's intervening cause argument was not addressed specifically in *Lopez.* However, as noted in dictum in *Lopez,* the jurisdictions that have considered this issue—both those cited in *Lopez* and others—have uniformly concluded that the victim's failure to wear a seatbelt does not amount to an intervening cause. *See Panther v. State,* 780 P.2d 386 (Alaska Ct.App.1989); *State v. Freeland,* 176 Ariz. 544, 863 P.2d 263 (Ct. App.1993); *People v. Wattier,* 51 Cal.App.4th 948, 59 Cal.Rptr.2d 483 (1996); *State v. Stewart,* 60 Conn.App. 301, 759 A.2d 142, *rev'd on other grounds,* 255 Conn. 913, 763 A.2d 1039 (2000); *Union v. State,* 642 So.2d 91 (Fla.Dist.Ct.App.1994)(victim's failure to wear seatbelt not a defense); *Whitener v. State,* 201 Ga.App. 309, 410 S.E.2d 796 (1991); *Green v. State,* 650 N.E.2d 307 (Ind. Ct.App.1995); *State v. Hubka,* 480 N.W.2d 867 (Iowa 1992); *People v. Clark,* 171 Mich. App. 656, 431 N.W.2d 88 (1988); *State v. Dodge,* 152 Vt. 503, 567 A.2d 1143 (1989); *State v. Nester,* 175 W.Va. 539, 336 S.E.2d 187 (1985); *State v. Turk,* 154 Wis.2d 294, 453 N.W.2d 163 (Ct.App.1990); *Allen v. State,* 43 P.3d 551 (Wyo.2002).

We agree with these jurisdictions and similarly conclude that the trial court properly rejected a jury instruction that the victims' failure to use seatbelts constituted an intervening cause of their injuries.

### IV. Jury Question and Trial Court Response

■ Defendant contends that the trial court erred when it answered the jury's question by referring the jury back to the instructions as a whole. We disagree.

The basis for this contention is not entirely clear. During deliberations, the jury submitted the following question to the court: "Like

alcohol, is there a legal threshold for cocaine metabolites in blood[?]"

After discussion with counsel, the trial court replied:

In response to your inquiry: The answer is there is no legal threshold for cocaine metabolites in the blood.

I refer you back to instruction number 1; specifically paragraph 2 regarding the law that you must apply. No single instruction describes all the law which must be applied. Therefore these instructions must be considered together as a whole.

Having said this, I direct your attention to instructions 14, 16, 20 and 21.

Defense counsel did not object to the first portion of the court's response, but argued that the jurors should only have been referred back to the instructions as a whole.

Although defendant appears to argue that referring the jury back to the instructions as a whole was inadequate, the trial court responded directly to the jurors' question, informing them that there is no legal threshold for drugs, as there is for alcohol. The court then pointed out particularly pertinent instructions regarding the standard to apply, the elements of the crimes, and the definitions of those elements. Further, the court properly instructed the jury to apply the instructions as a whole.

Thus, we perceive no error. *See Copeland v. People*, 2 P.3d 1283, 1288 (Colo.2000)(absent evidence to the contrary, we presume that the jury understood and heeded the trial court's instructions).

## V. Excessive Sentence

■ Defendant argues that the trial court abused its discretion by sentencing him to a total of forty-seven years because the sentence is excessive. We disagree.

Sentencing is a discretionary function, and because the trial court is more familiar with the defendant and the circumstances of the case, it is accorded wide latitude in its decisions on such matters. Thus, a trial court's sentencing decision will not be disturbed absent a clear abuse of discretion. *People v. Watkins*, 684 P.2d 234 (Colo.1984).

■ In exercising its sentencing discretion, a trial court must consider the nature and elements of the offense, the character and rehabilitative potential of the offender, any aggravating or mitigating circumstances, and the public interest in safety and deterrence. *People v. Eurioste*, 12 P.3d 847 (Colo. App.2000).

When a sentence outside the presumptive range is imposed, the court is required to make findings as to the aggravating circumstances that justify variation from the presumptive range and the reasons for imposing the sentence. Section 18–1.3–401(7), C.R.S. 2003. A reasonable explanation of the sentence imposed will suffice, provided the record of the sentencing proceeding indicates that the court considered the essential statutory factors. *People v. Eurioste, supra.*

The record does not support defendant's contention that the trial court gave undue weight to the public safety factor and no weight to the rehabilitation factor. The court noted the gravity of the harm resulting from defendant's offenses, defendant's lack of remorse, and his three prior felony convictions. These grounds directly relate to the trial court's assessment of defendant's rehabilitative potential. Further, the record indicates that the court considered the essential statutory factors.

Accordingly, we perceive no abuse of discretion in the sentence imposed. *See People v. Fuller*, 791 P.2d 702, 708 (Colo.1990)("Only in exceptional cases will an appellate court substitute its judgment for that of the trial court in sentencing matters.").

## VI. Consecutive Sentences

■ Defendant also argues that the trial court erred in sentencing him to consecutive sentences on all counts. Specifically, defendant contends that the two counts of leaving the scene of an accident were supported by the same evidence; therefore, § 18–1–408(3), C.R.S.2003, mandates concurrent sentencing on those counts. We disagree.

As a general rule, when a defendant is convicted of multiple offenses, the sentencing court has discretion to impose consecutive or

concurrent sentences. However, § 18–1–408(3) mandates imposition of concurrent sentences where offenses are supported by identical evidence, "except that, where multiple victims are involved, the court may, within its discretion, impose consecutive sentences." *See also Qureshi v. Dist. Court,* 727 P.2d 45 (Colo.1986); *People v. Martinez,* 36 P.3d 154, 164–65 (Colo.App.2001).

Here, the two leaving the scene offenses were committed against different victims. Thus, even if we assume that these offenses were supported by identical evidence, pursuant to § 18–1–408(3), the trial court had discretion to impose consecutive sentences. As discussed above, given the seriousness of the injuries resulting from defendant's actions and defendant's lack of remorse, we perceive no abuse of discretion.

The judgment and sentences are affirmed.

Judge MARQUEZ and Judge WEBB concur.