Willis CURRY, Appellant,

v.

UNITED STATES, Appellee.

No. 98–CF–1196.

District of Columbia Court of Appeals.

Argued Jan. 28, 2002.
Decided March 14, 2002.

Kenneth D. Auerbach, Silver Spring, MD, for appellant.

Valinda Jones, Assistant United States Attorney, with whom Wilma A. Lewis, United States Attorney at the time the brief was filed, and John R. Fisher and Thomas J. Tourish, Jr., Assistant United States Attorneys, were on the brief, for appellee.

Before FARRELL and GLICKMAN, Associate Judges, and PRYOR, Senior Judge.

PRYOR, Senior Judge.

After a trial by jury, appellant appeals from his conviction of involuntary manslaughter, D.C.Code § 22–2405 (1996 Repl.), as a lesser-included offense of the second-degree murder charge in the indictment. Appellant contends the trial judge committed an abuse of discretion in allowing "prior bad acts" evidence to be admitted over his objection. We find no error in the judge's ruling to allow the evidence, and therefore, affirm appellant's conviction.

## I.

On August 12, 1997, appellant Willis Curry was driving a loaded twenty-eight and one-half ton dump truck eastbound on Military Road in the District of Columbia. As Curry approached the intersection of Military Road and Nevada Avenue on his third trip of the day, he attempted to stop the truck, but was unable to do so. Eyewitnesses heard the truck's horn and the screeching of its brakes. After entering

the intersection, the dump truck struck a 1997 Cadillac, and then overturned onto a nearby Plymouth, killing the sole occupant of the Plymouth, Benjamin Cooper. Curry was taken to a nearby hospital and treated for minor injuries.

Prior to trial, the government, relying on *Drew v. United States,* 118 U.S.App. D.C. 11, 331 F.2d 85 (1964), informed the defense and the trial court that it intended to introduce evidence of Curry's driving record, which demonstrated that he had accrued eight traffic violations in the sixteen months prior to the fatal collision,[1] and of a nonfatal traffic collision on July 14, 1997, that involved Curry operating the same dump truck as in the collision which killed Cooper. On that date, Curry was attempting to stop at an intersection in Maryland when the brakes on the dump truck failed. Swerving to avoid a collision with a stopped vehicle, Curry navigated the truck over the median and into a collision with another vehicle in the oncoming lane. Investigators concluded that the brake failure on that occasion arose from a severed air hose; the owner of the truck was called to the scene to repair it.

In a written pretrial order addressing the *Drew* questions, the trial judge noted that she reviewed the proffered evidence to determine its probative value with respect to the offense charged. She noted specifically that "the Court must make a separate determination that the prejudicial effect upon the defendant does not substantially outweigh the probative value be-

fore admitting it." The trial judge decided to admit the evidence of Curry's past convictions and his July accident, with appropriate limiting instructions, as probative on the issue of malice, an essential element of the charge of second-degree murder.

At trial, at least four individuals who had the opportunity to drive or inspect the truck after the collision testified that there were signs of significant problems with the truck's brake system.[2] There was also testimony that the steering system was not operating as it should. While the posted speed limit for the relevant stretch of road was twenty-five miles per hour, one of the government's expert witnesses calculated that Curry must have been driving at a rate in excess of thirty-three miles per hour at the time he attempted to stop the truck. The same reconstructionist determined that the truck was likely traveling at a minimum of twenty-six miles per hour when it started to roll over on its side.

At the time of the collision Curry possessed a Class B commercial driver's license, which permitted him to drive the truck in question. As a commercial truck driver, Curry was required to conduct an inspection prior to the operation of his truck, including an evaluation of the truck's brake system. Curry also was obligated to inspect the truck at the end of every workday and record and report any problems to his employer. Indeed, his obligation to inspect the truck prior to its operation included a review of any post-

---

1. The evidence presented at trial revealed that Curry had the following violations on his driving record: failure to obey a traffic sign/light (3/27/97); driving 10–19 mph over the speed limit (11/18/96); driving 21–25 mph over the speed limit (9/13/96); failure to obey a traffic sign/light (6/3/96); driving 21–25 mph over the speed limit (5/20/96); driving 21–25 mph over the speed limit (5/2/96); driving at an unreasonable speed (4/16/96); driving 21–25 mph over the speed limit (4/5/96).

2. The four witnesses included: Metropolitan Police Department Traffic Enforcement Branch Officer Fernando Figueroa; Edward Medeiros, Director of Parts and Services at Central Truck Center; John Griffin, a truck mechanic who drove the truck shortly after the collision; and David Plant, the government's expert witness on accident reconstruction and engineering.

trip comments from the previous day and a verification of whether any corresponding repairs were undertaken. If a serious problem was noted in the inspection or if any necessary repairs had not been made, Curry, as a commercial truck driver, was under an obligation to take remedial action or decline to operate the vehicle. Such reports, often referred to as "log books," are normally kept in each truck. No such log book was found in the truck involved in the collision, nor did the owner of the vehicle, Curry's employer J & D Byrd Trucking Company, possess any post-trip inspection reports for the three months preceding the collision. In addition to evidence bearing on the estimated speed of appellant's vehicle, and expert testimony describing defects in the truck's brake system on the day of the fatal collision, the evidence of both Curry's driving record and the incident on July 14, 1997, was admitted over defense counsel's objection, accompanied by limiting instructions.

Curry testified that he had completed both the pre- and post-trip reports for the truck in question. Specifically, he testified that he had told his employer about a need for repairs on August 11, 1997, the day before the collision. According to Curry, during his pre-trip inspection on August 12, 1997, he noticed two new slack adjusters in the brake system which he believed were added in response to his post-trip

report from the day before. Appellant's position at trial was that the brake failure in this instance was sudden and unexpected. Accordingly, the defense moved unsuccessfully for a judgment of acquittal as to murder on the ground that proof of malice was lacking. Ultimately, the jury found Curry not guilty of second-degree murder, but guilty of the lesser-included offense of involuntary manslaughter. Curry was sentenced to a term of imprisonment.

## II.

### A.

Appellant contends the trial judge abused her discretion and committed error by allowing the prosecution, in the presentation of its case, to offer evidence regarding an earlier vehicular collision involving appellant's operation of the same vehicle, as well as evidence of prior convictions for excessive speed and signal violations. In addressing appellant's contention, we consider for the first time whether so-called *Drew* evidence of prior bad acts is admissible to prove malice, an essential element of second-degree murder, where the prosecution's theory of malice is not that the defendant actually intended to kill or injure, but rather that he acted with a "depraved heart," *i.e.*, wanton and willful disregard of a known, unreasonable risk to human life.[3]

---

**3.** In *Comber v. United States,* 584 A.2d 26 (D.C.1990) (en banc), our opinion extensively reviewed the history and present formulation of the second-degree murder and involuntary manslaughter offenses. Pertinent to this case, we have said that one theory of malice necessary to support a prosecution for murder may be proven where the perpetrator has acted with "such a wanton and willful disregard of an unreasonable human risk as to constitute malice aforethought even if there is not actual intent to kill or injure." *See Comber, supra,* 584 A.2d at 38–39 (internal citations omitted). A lesser charge arising from a death attribut-

able to conduct creating an extreme risk of death or serious bodily injury is involuntary manslaughter. We have stated that in the District of Columbia "one who unintentionally causes the death of another ... is guilty of involuntary manslaughter only where that conduct both creates extreme danger to life or of serious bodily injury and amounts to a gross deviation from a reasonable standard of care." *Comber, supra,* 584 A.2d at 49 (citing *Faunteroy v. United States,* 413 A.2d 1294, 1298–99 (D.C.1980) (internal quotations omitted)).

■ The major thrust of appellant's challenge rests on his view of what is generally known in this jurisdiction as the *Drew* rule.[4] This familiar concept, followed in many jurisdictions, state and federal, generally prohibits the use of prior crimes or prior bad acts offered to prove a predisposition to commit charged offenses. *See Drew, supra,* 118 U.S.App. D.C. at 15, 331 F.2d at 89. It is widely accepted that the presentation of evidence of prior "bad" behavior is fraught with the prospect that the jury might simply conclude that past behavior of the accused makes it probable that this is the kind of person who would likely commit the charged offense. A second part of the concept—sometimes called *Drew* exceptions in this jurisdiction—permits a party to offer evidence for specified limited purposes; such evidence is usually restricted to proof of motive, intent, absence of mistake or accident, common scheme or plan, or identity. This list of exceptions is not exclusive. *Id.* at 16, 331 F.2d at 90. Even when a party—in this case the prosecution—identifies and relies upon one or more of the exceptions, the court must still weigh a series of questions. Foremost of these inquiries is the question of relevance of the other evidence offered. More specifically, a judge must consider whether such evidence is probative on a material contested issue. Similarly, the court must consider whether evidence, though offered pursuant to an exception, does not bear primarily on predisposition to commit a crime. *Thompson v. United States,* 546 A.2d 414, 419–20 (D.C.1988). It must also inquire whether the proffered other behavior is fairly attributable to the accused. *Groves v. United States,* 564 A.2d 372, 374 (D.C.1989). Lastly, it must balance the probative value of the evidence against undue prejudice. *(Timothy) Rob-*

*inson v. United States,* 623 A.2d 1234, 1238 (D.C.1993).

■ In *Johnson v. United States,* 683 A.2d 1087 (D.C.1996) (en banc), *cert. denied,* 520 U.S. 1148, 117 S.Ct. 1323, 137 L.Ed.2d 484 (1997), this court reiterated these rules, and also modified our approach with respect to the potential prejudice associated with evidence admitted under one or more of the exceptions. *See Johnson,* 683 A.2d at 1099. Instead of the earlier presumption of prejudice attending such evidence, we have fashioned a different approach more closely aligned with federal practice, applying FEDERAL RULES OF EVIDENCE 403 and 404(b). *See id.* at 1099. Thus our current rule permits a judge, in the exercise of discretion, to admit other crimes evidence within one of the *Drew* exceptions unless the danger of unfair prejudice substantially outweighs the probative value of the proffered evidence. *See id.*

### B.

As the trial judge noted in her written pretrial order, the *Drew* rule has often been applied with respect to intentional criminal violations, *see, e.g., Johnson,* 683 A.2d at 1090–95 (holding that evidence of two murders in Maryland proximate in time to the murder charged in the indictment, along with probative evidence linking the bullets from the Maryland murders to the bullets from the charged murder, was admitted without error in order to prove the defendant's identity in the trial for the charged murder); *(Eugene) Robinson v. United States,* 486 A.2d 727, 729 (D.C.1985) (holding that in a prosecution for assault with a dangerous weapon and burglary, evidence of a prior altercation in which the defendant assaulted and threatened his girlfriend, among other bad acts,

---

4. *Drew v. United States,* 118 U.S.App. D.C. 11, 331 F.2d 85 (1964).

was admitted without error to prove the *Drew* exceptions of motive and intent); *Bowyer v. United States*, 422 A.2d 973, 974–77 (D.C.1980) (holding that in a trial charging defendant with different sexual assaults of different women, detailed evidence of each of the sexual assaults, showing a similar modus operandi, was admitted without error for purposes of proving identity), but this court has not yet expressly addressed *Drew* as applied to culpable behavior in the circumstances presented here.

Nationally, some courts have considered the question. In *United States v. Tan*, 254 F.3d 1204 (10th Cir.2001), the defendant, who was intoxicated, was involved in a fatal automobile collision. Indicted for second-degree murder, he successfully moved, before trial, to exclude evidence of prior convictions of driving while intoxicated. On appeal the court reversed the ruling, holding that the evidence was admissible because it was highly probative of malice, reflecting an indifference to the risk posed by continuing to drink and drive. In *United States v. Loera*, 923 F.2d 725 (9th Cir.1991), the defendant was convicted of homicide and other offenses resulting from an automobile collision caused by Loera while severely intoxicated. The court affirmed the prosecution's introduction of evidence of three previous convictions for driving under the influence of an intoxicating liquor, admitted for the limited purpose of establishing extreme disregard for the safety of others. In *United States v. Fleming*, 739 F.2d 945 (4th Cir.1984), Fleming was driving a vehicle while under the influence of alcohol and traveling at an excessive rate of speed; he lost control of his vehicle, causing a collision which killed the driver of an oncoming car. At trial, the government introduced Fleming's previous convictions for driving while intoxicated. Fleming was ultimately convicted of second-degree

murder. In holding that the admission of the evidence was free from error, the court noted that Fleming's "driving record would not have been admissible to show that defendant had a propensity to drive while drunk. FED.R.EVID. 404(b). However, the driving record was relevant to establish that defendant had grounds to be aware of the risk his drinking and driving while intoxicated presented to others." *See Fleming*, 739 F.2d at 949.

Two different divisions of the Court of Appeals of California have also admitted evidence of prior bad acts to prove the required element of malice in second-degree murder convictions based on "implied malice—a determination that the defendant actually appreciated the [great] risk [to human life] involved" by his conduct. *See People v. Johnson*, 30 Cal.App.4th 286, 36 Cal.Rptr.2d 4, 6–7 (1994) (four prior driving under the influence convictions admitted without error), and *People v. Contreras*, 26 Cal.App.4th 944, 31 Cal.Rptr.2d 757, 762–764 (1994) (three speeding tickets, five other moving violations, one accident, and suspension of driver's license admitted without error); *People v. Brogna*, 202 Cal.App.3d 700, 248 Cal.Rptr. 761, 766–67 (1988) (two prior convictions for driving under the influence properly admitted).

■ In each of these cases, evidence of prior relevant behavior was admitted with regard to a contested question of the defendant's conscious disregard of the risk involved in situations where the ensuing death was unintentional. Appellant has offered no persuasive rationale, or case authority, against the careful admission of such evidence. We have found no support for a blanket rejection of such evidence. Accordingly, we hold that, with respect to deaths that are unintentional (*e.g.*, second-degree, depraved heart murder), evidence

of prior bad acts can be admitted to show a defendant's consciousness of the risk of death or serious bodily injury to third persons, so long as the probative value of such evidence is not substantially outweighed by its prejudicial effect.

### C.

We reiterate that our review of the trial court's ruling focuses on whether there was an abuse of discretion in admitting the *Drew* evidence offered in this case. *See Freeman v. United States*, 689 A.2d 575, 580 (D.C.1997) (holding that "the admission or exclusion of evidence will be disturbed only upon a finding that the trial court abused its discretion"), (citing *Keene v. United States*, 661 A.2d 1073, 1076 (D.C. 1995)). When we examine this case, considering our own *Drew* rule as it has evolved, we necessarily consider the nature of the charge and whether other bad acts evidence was legitimately probative with respect to a contested issue. That such evidence is probative does not end the inquiry. As our decisions have stated, the trial judge must balance the probative value against its prejudicial effect. *See Johnson*, 683 A.2d at 1094–95.

The record reflects that a pivotal question presented to the jury in this case was whether appellant, in operating the truck under the circumstances, acted with conscious disregard that he was causing extreme risk to others. Appellant argued that he was unaware of any potential harm to others, and sought dismissal of the indictment on that basis. The government's theory of prosecution was the opposite; thus the parties plainly joined issue on a material critical question. In addition to evidence bearing on the general nature and massive force of this collision, the government produced evidence with regard to the likely speed of the truck. Similarly, there was testimony that, shortly after the collision, investigators found clear indications of defects in the braking and steering systems of the vehicle driven by appellant.

▮ In this context the government offered two kinds of evidence relating to appellant's prior behavior while operating vehicles. As noted, the prosecution showed appellant had an earlier collision while driving the same truck, which was caused, in part, by defective brakes. Under *Drew*, the concern is whether evidence of this prior incident would be viewed by the jury as showing generally that appellant had a propensity for driving with unsafe brakes and therefore did it again in this instance. However, the path of admission of this particular evidence, given appellant's experience from the previous collision, was its probativeness on the issue of his subjective awareness of the risks posed by his driving. Specifically, the government's evidence of the charged offense, if believed, established that appellant willfully blinded himself (or was grossly indifferent) to whether his brakes were defective at the time of the present accident. Proof of malice necessary to support a conviction for second-degree murder, however, required evidence in addition that he was subjectively aware of the danger that driving a truck in that condition posed to others, and on this point evidence that he had been involved in a serious traffic accident caused by the defective brakes of the same truck a month earlier was highly probative.

▮ The other class of "other acts" evidence the government introduced was appellant's repeated driving violations during the previous sixteen months. That evidence, in turn, was probative of appellant's subjective awareness that driving over the speed limit and in disregard of posted signals—as the government charged he had done here—was dangerous. As the

California court pointed out in *People v. Johnson, supra,* driving in excess of the limits "is unlawful because it is dangerous," 36 Cal.Rptr.2d at 8; hence appellant's recent history of proven unlawful driving bore directly on his knowledge of the risks his present conduct entailed—in turn demonstrating the state of mind necessary for murder on the theory alleged.

 In this instance we conclude the trial judge was diligent in exercising her discretion. The contested evidence was relevant. It had probative value regarding material questions presented to the jury. However, the admission of the evidence was not without risks of prejudice. Recognizing this concern, the judge gave a limiting instruction:

> You have heard evidence that the defendant was convicted of eight prior driving violations and was involved in an accident driving the same truck in July of 1997. It is up to you to decide whether to accept that evidence.

> If you consider evidence that the defendant was convicted of eight prior driving violations and was involved in an accident driving the same truck in July of 1997, you may use the evidence of the prior driving convictions and the prior collision only to help you decide whether the government had proved beyond a reasonable doubt that the defendant acted in conscious regard of an extreme risk of death or serious bodily injury to the decedent, that is, that he was on notice that his driving patterns and/or his operation of an unsafe vehicle created a substantial danger to others.

> You may not consider this evidence for any other purpose except as I specifically instruct you. You may not consider this evidence to conclude that the defendant has a bad character, or that the defendant has a criminal personality. The law does not allow you to convict a defendant simply because you believe he may have done bad things not specifically charged as crimes in this case. Specifically, you may not consider this evidence in deciding whether the government has proved that, on the day of the murder charged, the defendant's truck was travelling in excess of the speed limit, the defendant ran a red light, or that the defendant knew he was driving with faulty brakes.

> You may only consider the evidence of the defendant's prior driving convictions and July, 1997, collision for the limited purpose of showing whether, on August 12, 1997, the defendant was aware of the risks of his conduct and that his actions were not due to accident or mistake.

We observe the indictment was for second-degree murder. It appears that the jurors were able to weigh all of the evidence, deliberate on the charges, apply the limiting instructions, and ultimately reach a verdict. They were not convinced beyond a reasonable doubt that defendant *knew* of the risk to others inherent in the driving of his truck, but found instead that he *should have known* of that risk (sufficient for proving involuntary manslaughter). The fact that the jurors had a choice and chose a lesser offense militates against a conclusion that there was any unfair or prejudicial rush to judgment by the jury.

Ultimately, after weighing the pertinent evidentiary considerations in this instance the trial judge concluded the probative value of the contested evidence was not substantially outweighed by undue prejudice. We perceive no abuse of discretion by the trial judge on this issue. Accordingly, the judgment on appeal is affirmed.

*So ordered.*