Filed 10/14/20 P. v. Klein CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> ARTHUR ERROL KLEIN, <br><br> Defendant and Appellant. | B295039 <br><br> (Los Angeles County <br> Super. Ct. No. KA115987) |

Appeal from a judgment of the Superior Court of Los Angeles County, Thomas Falls, Judge. Affirmed and remanded with directions.

Joshua L. Siegel, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Acting Senior Assistant Attorney General, Paul M. Roadarmel, Jr. and William N. Frank, Deputy Attorneys General, for Plaintiff and Respondent.

Arthur Errol Klein appeals from the judgment entered after a jury convicted him of the second degree murder of Martin Razo, whom Klein had struck and killed while driving under the influence of alcohol.  Klein, sentenced to an indeterminate state prison term of 15 years to life, contends his conviction was not supported by substantial evidence.  He also asserts the trial court improperly instructed the jury on the issues of malice and causation and erred by failing to instruct on vehicular manslaughter as a lesser included offense of murder.  We affirm but remand to give Klein an opportunity to request a hearing on, and present evidence concerning, his ability to pay the fine, fee and assessment the court imposed.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Information*

Klein was charged by information with second degree murder (Pen. Code, § 187)[1] (count 1) and gross vehicular manslaughter while intoxicated (§ 191.5, subd. (a)) (count 2).  As to count 2, it was specially alleged Klein had suffered two prior convictions within the meaning of section 191.5, subdivision (d).  Klein pleaded not guilty and denied the special allegations.

2. *The Evidence at Trial*

On the afternoon of August 9, 2017 a teenager riding his bicycle north on Underhill Drive in Glendora saw a black truck driving toward him.  As the truck rounded a broad curve in the road, it swerved suddenly to avoid a white utility truck parked on the side of the road and struck Razo, who had been standing next

---

[1]     Statutory references are to this code unless otherwise stated.

to his truck replacing his landscaping tools. Klein, the driver of the black truck, stopped and went over to Razo, who was lying on the ground bleeding from a serious head wound and other injuries. A neighbor, a nurse, came from a nearby house, called the emergency hotline and tried to help Razo. Klein sat on the side of the street with his head in his hands, visibly distraught. Police and paramedics arrived several minutes later, but Razo was nonresponsive and no longer had a pulse.

Glendora Police Officer Josh Price spoke to Klein, who said he had been on his way home and had not seen Razo standing next to his truck. Price smelled alcohol on Klein's breath and initiated a field sobriety investigation. Although Klein performed fairly well on some of the field sobriety tests, his gaze demonstrated significant horizontal and vertical nystagmus. After first denying he had been drinking that day, Klein later admitted to having consumed a couple of rum drinks and a beer during the hours before the incident.[2] About 30 minutes after the accident a preliminary alcohol screening of Klein's blood alcohol content (BAC) measured .22 percent. Klein admitted to feeling the effects of the alcohol. About two hours after the accident a

---

[2] Based on interviews with Klein at the police station, receipts found in his possession and surveillance video recordings at the store where he bought alcohol, the police were able to construct a timeline of Klein's alcohol consumption. He drank heavily the day before and again during the early morning hours of August 9, 2017. After waking that morning, he drank 24 ounces of ale and later purchased alcoholic beverages while he drove between Pasadena, where he was employed, and his home in Glendora. He drank two rum cocktails between 11:00 a.m. and noon and another two around 1:00 p.m., as well as, possibly, another 24 ounces of ale.

repeated screening measured Klein's BAC as .20 percent. After six hours Klein's blood sample yielded a BAC of .14 percent. A senior criminalist from the Los Angeles County Sheriff's Department opined that, based on Klein's drinking pattern, a BAC reading of .20 percent two hours after the accident meant that someone of Klein's weight would have had a BAC of as much as .25 percent at the time of the accident. People with blood alcohol content levels of .08 percent or higher are impaired to drive a vehicle safely.

Glendora Police Officer William Turnley testified as a traffic collision expert and opined that Klein's intoxication caused him to strike Razo. Turnley saw no evidence Klein had been speeding but concluded Klein's truck struck Razo after Klein made an unsafe turning movement.[3]

At the police station Klein told an officer he had previously been convicted of driving under the influence of alcohol and that, looking back, he must have been too intoxicated to drive safely at the time of the collision. Court records showed Klein had twice been convicted of driving under the influence of alcohol and had received several *Watson* advisements he could be convicted of murder if he killed someone while driving under the influence of alcohol. (See *People v. Watson* (1981) 30 Cal.3d 290, 296

---

[3] Officer Turnley also testified he had inspected the truck and found it free from mechanical defects. Klein told officers he was familiar with the curve on Underhill Drive and sometimes, for fun, tried to take the curve as widely as possible in a way that allowed his turn signal to stay on. As Klein neared 20 feet of Razo's truck, he swerved five feet to his left, leaving 30-foot-long tire friction marks starting only a short distance from where Razo stood.

(*Watson*).)[4]  On February 24, 2006 Klein had pleaded guilty to driving under the influence of alcohol and acknowledged with his initials that he had been given the following advisement: "[B]eing under the influence of alcohol or drugs, or both, impairs my ability to safely operate a motor vehicle.  Therefore, it is extremely dangerous to human life to drive while under the influence of alcohol or drugs, or both.  If I continue to drive while under the influence of alcohol or drugs, or both, and, as a result of that driving, someone is killed, I can be charged with murder." On June 28, 2010 Klein pleaded no contest to driving under the influence of alcohol (after turning left against a red light and colliding with another vehicle) and was given the same *Watson* advisement.  On January 29, 2011 Klein attended a Mothers Against Drunk Diving program in which he was again informed about the dangers of drinking and driving and told that, if he continued to drive while intoxicated and, as a result, killed someone, he could be charged with murder.

Klein did not testify and presented no other defense.

### 3. *The Verdict and Sentencing*

After deliberating for less than two hours, the presiding juror sent a request for another copy of the verdict form finding Klein guilty and, within half an hour, a note asking whether the jury needed to reach a verdict on count 2 if it had reached a verdict on count 1.  The parties agreed to hear the verdict on count 1 before the jury reached a verdict on count 2.  After the

---

[4]  A *Watson* advisement is given to defendants convicted of driving under the influence of alcohol or drugs pursuant to Vehicle Code section 23593.

jury's verdict of guilty on count 1 was read, the court granted the prosecutor's motion to dismiss count 2.

The court sentenced Klein to an indeterminate state prison term of 15 years to life and ordered him to pay a $40 court operations assessment (Pen. Code, § 1465.8, subd. (a)(1)), a $30 court facilities assessment fee (Gov. Code, § 70373) and a $300 restitution fine (Pen. Code, § 1202.4, subd. (b)).

## DISCUSSION

1. *Substantial Evidence Supports Klein's Conviction for Second Degree Murder*

Klein contends the evidence at trial was insufficient to prove he acted with implied malice when he drove his truck while intoxicated and killed Razo.[5]  He argues there was no evidence he

---

[5]    In considering a claim of insufficient evidence in a criminal case, "we review the whole record to determine whether *any* rational trier of fact could have found the essential elements of the crime . . . beyond a reasonable doubt.  The record must disclose substantial evidence to support the verdict—i.e., evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence. Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.  We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence. A reversal for insufficient evidence is unwarranted unless it appears that upon no hypothesis whatever is there sufficient

drove in a highly dangerous manner, displayed outward signs of intoxication or actually knew he was too impaired to drive safely.

To be guilty of murder, a defendant must kill "with malice aforethought." (§ 187.) "[M]alice may be express or implied." (§ 188.) It is express when the defendant "manifest[s] a deliberate intention to unlawfully take away the life of a fellow creature." (§ 188, subd. (a)(1).) Measured by a subjective, rather than objective, standard, "malice may be implied when a person, knowing that his conduct endangers the life of another, nonetheless acts deliberately with conscious disregard for life." (*Watson*, *supra*, 30 Cal.3d at p. 296, italics omitted; accord, *People v. Knoller* (2007) 41 Cal.4th 139, 143.) So long as these elements are met, a defendant who kills someone as a result of driving under the influence of alcohol or drugs may be convicted of murder under an implied malice theory. (See *Watson*, at p. 298; *People v. Wolfe* (2018) 20 Cal.App.5th 673, 681 (*Wolfe*) ["[m]alice may be implied when a person willfully drives under the influence of alcohol"].)

Klein reminds us the *Watson* Court cautioned that a charge of second degree murder should not become routine for intoxicated drivers who cause the death of another person: "[W]e neither contemplate nor encourage the routine charging of second degree murder in vehicular homicide cases." (*Watson*, *supra*, 30 Cal.3d at p. 301.) As described in *Wolfe*, *supra*, 20 Cal.App.5th at pages 682-683, "Generally, [courts] 'have relied on some or all of the following

_____

substantial evidence to support the jury's verdict." (*People v. Penunuri* (2018) 5 Cal.5th 126, 142, citations and internal quotation marks omitted; accord, *People v. Dalton* (2019) 7 Cal.5th 166, 243-244; *People v. Zamudio* (2008) 43 Cal.4th 327, 357.)

7

factors' that were present in *Watson*: '(1) blood-alcohol level above the .08 percent legal limit; (2) a predrinking intent to drive; (3) knowledge of the hazards of driving while intoxicated; and (4) highly dangerous driving.'"

Based on this language from *Watson* and *Wolfe* and the facts involved in a number of prior cases, Klein suggests a charge of second degree murder should be reserved for those who are observed to have violated traffic laws in a demonstrably dangerous manner in the moments before an accident occurs. For instance, the *Watson* Court noted that, just before colliding with the victims' car, the defendant, who had been drinking at a bar, returned to his car, drove at excessive speeds, ran a red light and narrowly avoided hitting another car. Rather than stop, the driver resumed his excessive speed before colliding with the victims' car. (*Watson*, *supra*, 30 Cal.3d at pp. 300-301.) Likewise, in *People v. McCarnes* (1986) 179 Cal.App.3d 525 the defendant passed several cars at a high rate of speed by driving on the wrong side of the road before he hit the decedents' vehicle head-on. (*Id.* at p. 533; see also *Wolfe*, *supra*, 20 Cal.App.5th at p. 679 [defendant failed to negotiate a curve, swerved out of her lane and made no attempt to stop before hitting a pedestrian standing in the gutter on the other side of the street]; *People v. Johnigan* (2011) 196 Cal.App.4th 1084, 1087-1092 [defendant drove home from a bar ignoring friends' warnings and offers to give her a ride; when stopped by police for blocking traffic, she drove off at high speed and swerved across two lanes of traffic before colliding with another car]; *People v. Ferguson* (2011) 194 Cal.App.4th 1070, 1074-1075 [defendant driving 75 m.p.h. rear-ended car stopped at a red light, killing one of the occupants]; *People v. Moore* (2010) 187 Cal.App.4th 937, 939-941 [defendant drove at more than twice the posted speed limit, repeatedly

8

swerving into oncoming traffic before running a red light and colliding with the decedent's car]; *People v. Autry* (1995) 37 Cal.App.4th 351, 356-359 [defendant ignored a warning sign indicating a lane closure, veered into the median and killed two construction workers].) Klein contends, because there is no evidence he was speeding or violating traffic laws, the jury could not have reasonably found he acted with malice.

The rule Klein describes and asks us to follow, however, is not supported by the governing case law. Thus, after identifying the four factors from *Watson*, the *Wolfe* court explained, "However, 'nowhere does the opinion in *Watson* state that all of the factors present in that case are necessary to a finding of second degree murder. Rather, the opinion states that the presence of those factors was sufficient *in that case.*'" (*Wolfe, supra*, 20 Cal.App.5th at pp. 682-683; accord, *People v. Munoz* (2019) 31 Cal.App.5th 143, 152.) In other words, a jury is entitled to consider all of the available facts in evaluating whether a defendant acted with implied malice in a particular case.

On appeal Klein essentially ignores the evidence the jury was entitled to consider in finding he had acted with implied malice. Having been convicted twice of driving under the influence and having received at least three *Watson* admonitions, Klein was well-acquainted with the dangers associated with drinking and driving. He was informed repeatedly that driving while impaired (that is, with a BAC of .08 percent or more) was dangerous and that he could be convicted of murder if his impaired driving caused someone to die. He acknowledged to officers that driving while intoxicated was dangerous, a fact he could hardly deny.

Klein also knew on August 9, 2017 when he repeatedly bought and consumed alcoholic beverages in his car that he would be driving a substantial distance after drinking. Because he could not drink at home (his parents disliked his drinking), he chose instead to do so while driving around for several hours. He told officers he had been having "a bad day," which the jury reasonably could understand as motivation (or self-serving justification) for him to drink heavily while at the wheel. He drank so heavily that at 2:00 p.m., the time he hit Razo, his blood alcohol content was as high as .25 percent, more than three times the legal limit of .08 percent. When interviewed by officers after the accident, he was unable to remember his actions that day, asserting at one point he had gone hiking near Pasadena but then contradicting himself moments later. He also said he had driven up Glendora Mountain Road but had then driven back down rather than stop and allow himself to recover. Nonetheless, he was sufficiently alert to deny drinking alcohol in his first conversations with officers, although, when pressed, he conceded he had been drinking and sought to minimize its effect on him.

As the trial court pointed out, none of this evidence indicated Klein intended to harm another person. Like many such cases, the outcome is sad for all. But the fact remains the jury heard testimony that depicted an extremely intoxicated man, who knew from prior experience that he should not be driving while in that condition because of the danger to life engendered by such conduct, yet deliberately chose to spend much of the day doing exactly that, exhibiting conscious disregard for life. Under the totality of the circumstances, the jury's verdict was supported by substantial evidence of implied malice.

10

2. *The Trial Court Did Not Err in Instructing the Jury on Implied Malice*

a. *The second degree murder instruction*

The trial court instructed the jury on the elements of second degree murder with CALJIC No. 8.31, which provides, "Murder of the second degree is the unlawful killing of a human being when:  [¶] 1. The killing resulted from an intentional act, [¶] 2. The natural consequences of the act are dangerous to human life, and [¶] 3. The act was deliberately performed with knowledge of the danger to, and with conscious disregard for, human life.  [¶]  When the killing is the direct result of such an act, it is not necessary to prove that the defendant intended that the act would result in the death of a human being."  The court did not instruct the jury with CALJIC Nos. 8.10, which identifies "malice aforethought" as an element of murder, or 8.11, which defines express and implied malice and explains that malice aforethought means either express or implied malice.[6]

---

[6]      CALJIC No. 8.10 states, in part, "Every person who unlawfully kills a human being . . . with malice aforethought . . . is guilty of the crime of murder in violation of Penal Code § 187."

CALJIC No. 8.11 provides, "'Malice' may be either express or implied. [¶] Malice is express when there is manifested an intention unlawfully to kill a human being. [¶] Malice is implied when: [¶] 1. The killing resulted from an intentional act; [¶] 2. The natural consequences of the act are dangerous to human life; and [¶] 3. The act was deliberately performed with knowledge of the danger to, and with conscious disregard for, human life. [¶] When it is shown that a killing resulted from the intentional doing of an act with express or implied malice, no other mental state need be shown to establish the mental state of malice aforethought. [¶] The mental state constituting malice

11

Although Klein's defense counsel did not object to the malice instruction, on appeal Klein argues the omission of CALJIC Nos. 8.10 and 8.11 resulted in the jury receiving an incomplete and inaccurate instruction on an element of second degree murder that improperly relieved the People of their burden of proof.[7]

---

aforethought does not necessarily require any ill will or hatred of the person killed. [¶] The word 'aforethought' does not imply deliberation or the lapse of considerable time. It only means that the required mental state must precede rather than follow the act."

[7] The Attorney General contends Klein forfeited the issue of instructional error by failing to object to the jury instruction at trial. The Attorney General is correct that, nominally, a defendant who fails to object to a proposed jury instruction forfeits the right to challenge that instruction on appeal. (*People v. Mitchell* (2019) 7 Cal.5th 561, 579; *People v. Bolin* (1998) 18 Cal.4th 297, 326.) However, an appellate court may review any claim of instructional error that affects a defendant's substantial rights without an objection in the trial court. (§ 1259 ["appellate court may also review any instruction given, . . . even though no objection was made thereto in the lower court, if the substantial rights of the defendant were affected thereby"]; *People v. Hudson* (2006) 38 Cal.4th 1002, 1011-1012 [failure to object to instruction does not forfeit issue on appeal when alleged error concerns elements of offense]; *People v. Smithey* (1999) 20 Cal.4th 936, 976, fn. 7 [defendant did not forfeit right to object to instruction alleged to be incorrect statement of law and given in violation of due process].) Of course, "[w]e can only determine if [a] defendant['s] substantial rights were affected by deciding whether the instruction was given in error and, if so, whether the error was prejudicial." (*People v. Medina* (2019) 33 Cal.App.5th 146, 154, fn. 7; accord, *People v. Stringer* (2019) 41 Cal.App.5th 974, 981, fn. 2].) That is, if Klein's claim has merit, it has not

b. *Standard of review*

A trial court in a criminal case has a duty to instruct on general principles of law applicable to the case (*People v. Mitchell* (2019) 7 Cal.5th 561, 586), that is, "'"those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case."'"" (*People v. Valdez* (2004) 32 Cal.4th 73, 115; accord, *People v. Blacksher* (2011) 52 Cal.4th 769, 845-846.) A claim of instructional error is reviewed de novo. (*Mitchell*, at p. 579; *People v. Cole* (2004) 33 Cal.4th 1158, 1210.) An appellate court reviews the wording of a jury instruction de novo and assesses whether the instruction accurately states the law. (*Mitchell*, at p.579; *People v. Posey* (2004) 32 Cal.4th 193, 218.) "In reviewing a claim of instructional error, the court must consider whether there is a reasonable likelihood that the trial court's instructions caused the jury to misapply the law in violation of the Constitution. [Citations.] The challenged instruction is viewed 'in the context of the instructions as a whole and the trial record to determine whether there is a reasonable likelihood the jury applied the instruction in an impermissible manner.'" (*Mitchell*, at p. 579; accord, *People v. Houston* (2012) 54 Cal.4th 1186, 1229.)

c. *The omission of the terms "malice aforethought" and "implied malice" did not impair the accuracy of the court's instruction*

While Klein acknowledges the Supreme Court in *People v. Nieto Benitez* (1992) 4 Cal.4th 91, 111, held CALJIC No. 8.31 correctly stated the elements of second degree murder, including

---

been forfeited. We therefore necessarily review the merits of his contention there was instructional error.

the definition of implied malice, he contends, if, as here, the jury was not instructed that "malice aforethought," in general, and "implied malice," in particular, is an element of second degree murder, then the guilty verdict does not necessarily show the prosecution proved all the elements of the charge. Not surprisingly, Klein cites no authority for this proposition, relying on general statements regarding the need to instruct on all elements of the crime from *People v. Merritt* (2017) 2 Cal.5th 819, a robbery case in which the trial court instructed only on the mental state required for robbery and not its other elements, including that the defendant had used force or fear to take property from the other person or his or her immediate presence. (*Id.* at p. 824.)[8]

CALJIC No. 8.31 includes verbatim the definition of implied malice contained in CALJIC No. 8.11. (See *People v. Dellinger* (1989) 49 Cal.3d 1212, 1221-1222 [approving then newly revised CALJIC Nos. 8.11 and 8.31, and referring to the two instructions as including, in the singular, a correct definition of the term implied malice].) Because the murder charge against Klein was not tried on a theory of express malice, omitting a reference to that term and its definition, the other part of CALJIC No. 8.11, did not impair the accuracy or completeness of

---

[8]     The *Merritt* Court ultimately found the instructional error harmless beyond a reasonable doubt because both the prosecutor and defense counsel discussed all the elements of robbery in their closing arguments, the two victims testified, the crimes had been captured on videotape and the defense conceded the robberies had taken place but argued the People had failed to prove beyond a reasonable doubt that defendant was the perpetrator. (*People v. Merritt, supra,* 2 Cal.5th at p. 832.)

the instructions in this case.  Nor did the court's use of the full definition of "implied malice" as set forth in CALJIC Nos. 8.11 and 8.31 without using that term itself permit the People to obtain a guilty verdict on second degree murder without proving beyond a reasonable doubt the mental state required for the crime.[9]  Similarly, omitting the arcane legal term "malice aforethought" and the three steps necessary for the jury to understand the requisite mental state for second degree murder as charged in this case (malice aforethought means implied malice, which, in turn, means the definition provided in CALJIC No. 8.31) did not in any way reduce the prosecutor's burden of proof.[10]

---

[9]     Although the court's instructions did not include the term "implied malice," at the outset of her summation, the prosecutor told the jury, "And this is an implied malice murder," and then reviewed the elements of the crime as set forth in CALJIC No. 8.31.  (See generally *People v. Hajek and Vo* (2014) 58 Cal.4th 1144, 1220 ["'any theoretical possibility of confusion [in the jury instructions may be] diminished by the parties' closing argument'"], disapproved on another ground in *People v. Rangel* (2016) 62 Cal.4th 1192, 1216.)

[10]     We agree with Klein that it would be better practice for superior court judges trying criminal cases to use CALCRIM pattern instructions (see Cal. Rules of Court, rule 2.1050(e) ["[u]se of the Judicial Council instructions is strongly encouraged"]), but it is not error to persist in using CALJIC instructions that adequately cover the pertinent legal principles. (See *People v. Cornejo* (2016) 3 Cal.App.5th 36, 60.)

### 3. *The Trial Court Did Not Commit Prejudicial Error in Instructing the Jury on Causation*

As discussed, using CALJIC No. 8.31 the court instructed the jury, for Klein to be found guilty of second degree murder, the People had to prove the natural consequences of Klein's driving while intoxicated were dangerous to human life and Razo's death was the "direct result" of Klein's intentional and unlawful act of driving while under the influence of alcohol. Klein contends that definition was insufficient on the facts of this case, which he asserts included evidence Razo's death was the result of his own negligence, not Klein's intoxicated driving. To have been accurate and complete, Klein argues, the court, sua sponte, should also have instructed with CALJIC No. 8.55, which states, "To constitute murder . . . there must be, in addition to the death of a human being, an unlawful act which was the cause of that death"; and No. 3.41, which states, "When the conduct of two or more persons contributes concurrently as a cause of the [death], the conduct of each is a cause of the [death] if that conduct was also a substantial factor contributing to the result . . . . [¶] If you find that the defendant's conduct was a cause of [death] . . . , it is no defense that the conduct of some other person, even the deceased person, contributed to the [death]."[11] Alternatively, Klein continues, if the court had used CALCRIM No. 520 to

---

[11] In the course of defining negligence for purpose of the lesser included offenses to the charge in count 2 of gross vehicular manslaughter while intoxicated, the court instructed the jury with CALJIC No. 8.56, which states, "It is not a defense to a criminal charge that the deceased or some other person was guilty of negligence, which was a contributory cause of the death involved in the case."

define implied malice second degree murder, the jury would have been properly instructed that "[t]here may be more than one cause of death.  An act causes death only if it is a substantial factor in causing the death.  A *substantial factor* is more than a trivial or remote factor.  However, it does not need to be the only factor that causes the death."[12]

According to Klein, there was evidence Razo was negligent to at least some extent.  He was standing in the street, wearing clothing that (as Klein interprets it) matched the color of his truck, without any safety cones or other warning signals around him.  Because of the sun's position (again, as Klein interprets the evidence), it would have been difficult for even a reasonably careful driver to have seen Razo.[13]  Accordingly, a properly instructed jury might have found Klein's drunk driving was only a remote or trivial factor in causing Razo's death (in the language of CALCRIM No. 520); but this jury, having not been instructed on the substantial factor requirement of causation, did not have that option, incorrectly having been told, in effect, that but for causation was adequate to prove murder.  (See *People v. Pike* (1988) 197 Cal.App.3d 732, 748 ["[o]nly when the defendant's grossly negligent conduct is a remote cause, and the negligent or reckless conduct of the victim or other party is the sole proximate cause of the death, will the defendant be relieved of culpability"].)

---

[12]     Klein notes that CALCRIM No. 620, Causation:  Special Issues, for use in homicide cases, includes the same substantial factor language as CALCRIM No. 520.

[13]     In reviewing this evidence in closing argument, Klein's counsel insisted, "Now, we're not saying at all that Mr. Razo is at fault here.  We're just pointing out where he was and other circumstances that could have avoided the collision."

17

Neither CAJIC No. 8.55 nor No. 3.41 was required in this case. CALJIC No. 8.55, instructing that the defendant's unlawful act must have caused the death, would have been redundant; CALJIC No. 8.31 adequately instructed that Razo's death had to be the direct result of Klein's unlawful driving. As discussed, the Supreme Court in *People v. Nieto Benitez, supra*, 4 Cal.4th at page 111 approved CALJIC No. 8.31 as properly detailing the necessary elements for implied malice murder.

CALJIC No. 3.41 was also unnecessary. As the use note explains, "CALJIC 3.41 should be given where the evidence places in issue two or more causes of the result of the crime. [¶] Where cause is in issue, the court must instruct sua sponte on that subject."[14] (Use Note to CALJIC No. 3.41 (2020-2 update).) Simply put, cause was not an issue in this case, only Klein's degree of culpability. There was no evidence, let alone substantial evidence, Klein's driving while intoxicated was not a substantial factor in Razo's death.

Photographs admitted into evidence showed the accident occurred on a relatively wide residential street. The undisputed evidence established that Razo's truck was lawfully parked within 18 inches of the curb. Razo was standing within two feet

---

[14] Similarly, the bench note to CALCRIM No. 520 indicates the additional instruction Klein contends was necessary is properly given only when there is evidence of multiple causes of the victim's death: "If the evidence indicates that there was only one cause of death, the court should give the 'direct, natural, and probable' language in the first bracketed paragraph on causation. If there is evidence of multiple causes of death, the court should also give the 'substantial factor' instruction and definition in the second bracketed causation paragraph." (Bench Note to CALCRIM No. 520 (2020 ed.) p. 239.)

of his truck, putting tools back into it, when Klein, making an unsafe turn "for fun," swerved left about five feet as he approached Razo. And while Razo wore a white shirt, which Klein argued made him difficult to see in the afternoon sun, Razo was also wearing gray pants and a straw hat, which contrasted with the white color of his truck. Indeed, in closing argument Klein's counsel did not dispute the issue of causation, urging the jury to find his client guilty only of vehicular manslaughter while intoxicated, a lesser included offense to count 2: "He committed a crime. He committed the crime of vehicular manslaughter without gross negligence but while he was intoxicated. That is the crime he certainly committed. Everything above that was not what he did, has not been proven beyond a reasonable doubt."[15]

Klein's final causation argument—that it was error to include CALJIC No. 8.56, the instruction stating it is not a defense to a criminal charge that the deceased or some other person was guilty of negligence that was a contributory cause of death—is similarly without merit. Not only is CALJIC No. 8.56 an accurate statement of the law (*People v. Brady* (2005) 129 Cal.App.4th 1314, 1328; *People v. Pike*, *supra*, 197 Cal.App.3d at p. 748), but also the language Klein criticizes is repeated in substantially the same form in CALJIC No. 3.41 ("it is no defense that the conduct of some other person, even the

---

[15] Causation, of course, is a necessary element of vehicular manslaughter while intoxicated, ordinary negligence (§ 191.5, subd. (b)), gross vehicular manslaughter (§ 192, subd. (c)(1)), and misdemeanor vehicular manslaughter (§ 192, subd. (c)(2)). (See CALCRIM Nos. 591, 592 & 593 [all three instructions requiring the People to prove beyond a reasonable doubt the defendant's conduct "caused the death of another person"].)

deceased person, contributed to the death"), which Klein insists should have been given in this case.[16]

    4. *The Trial Court Did Not Commit Prejudicial Error by Failing To Describe Vehicular Manslaughter as a Lesser Included Offense of Murder*

"'[I]t is the "court's duty to instruct the jury not only on the crime with which the defendant is charged, but also on any lesser offense that is both included in the offense charged and shown by the evidence to have been committed."'" (*People v. Castaneda* (2011) 51 Cal.4th 1292, 1327; accord, *People v. Westerfield* (2019) 6 Cal.5th 632, 718.)  Because voluntary and involuntary manslaughter are lesser included offenses of murder (*People v. Thomas* (2012) 53 Cal.4th 771, 813; see *People v. Breverman* (1998) 19 Cal.4th 142, 154 [voluntary manslaughter]; *People v. Gutierrez* (2002) 28 Cal.4th 1083, 1145 [involuntary manslaughter]), Klein argues it was error for the trial court not to instruct the jury that vehicular manslaughter pursuant to section 192, subdivision (c), was a lesser included offense of the charged murder, notwithstanding that section 192, subdivision (b), defining involuntary manslaughter, expressly

---

[16]    Given this state of the evidence, even if it were error for the court not to have given an additional causation instruction sua sponte, any such error would be harmless.  (See *People v. Crew* (2003) 31 Cal.4th 822, 847 [any error in causation instructions was harmless under either the federal or state standard "because here it is clear beyond a reasonable doubt that a rational jury would have found defendant guilty absent any error"].)

20

states, "This subdivision shall not apply to acts committed in the driving of a vehicle."[17]

The Supreme Court in *People v. Sanchez* (2001) 24 Cal.4th 983 (*Sanchez*), disapproved on another ground in *People v. Reed* (2006) 38 Cal.4th 1224, 1228-1229, held, under the statutory elements test, gross vehicular manslaughter while intoxicated, the offense defined by section 191.5 and charged as count 2 in this case, is not a lesser included offense of implied malice murder. The Court explained, "When we compare the elements of murder with the elements of gross vehicular manslaughter while intoxicated, it appears, as the Court of Appeal concluded, that the statutory elements of murder do not include all the elements of the lesser offense. Gross vehicular manslaughter while intoxicated requires proof of elements that need not be proved when the charge is murder, namely, use of a vehicle and intoxication. Specifically, section 191.5 requires proof that the homicide was committed 'in the driving of a vehicle' and that the driving was in violation of specified Vehicle Code provisions prohibiting driving while intoxicated. [¶] Defendant contends that gross vehicular manslaughter while intoxicated merely

---

[17]    Section 192, subdivision (c), defines vehicular manslaughter, in part, as, "(1) Except as provided in subdivision (a) of Section 191.5, driving a vehicle in the commission of an unlawful act, not amounting to a felony, and with gross negligence; or driving a vehicle in the commission of a lawful act which might produce death, in an unlawful manner, and with gross negligence. [¶] (2) Driving a vehicle in the commission of an unlawful act, not amounting to a felony, but without gross negligence; or driving a vehicle in the commission of a lawful act which might produce death, in an unlawful manner, but without gross negligence."

21

requires proof of a certain *variety* of unlawful killing, and that the essential common element of proof in both manslaughter and murder simply is an unlawful killing. We believe this contention is unfounded for the same reason that courts have concluded that assault with a deadly weapon is not an offense necessarily included within the offense of murder. The lesser offense contains crucial elements of proof that are absent from the greater offense, thereby making it possible to commit the greater offense without necessarily committing the lesser offense." (*Id.* at p. 989.)

As the Attorney General argues, the same elements test applied in *Sanchez* precludes recognizing other forms of vehicular manslaughter as lesser included offenses of murder. (See *People v. Bettasso* (2020) 49 Cal.App.5th 1050, 1057 [the argument vehicular manslaughter pursuant to section 192, subdivision (c), is a lesser included offense of second degree murder is foreclosed by *Sanchez*]; *Wolfe*, *supra*, 20 Cal.App.5th at p. 685 [same].) Although Klein acknowledges the holding in *Sanchez*, he attempts to distinguish it, emphasizing that *Sanchez* considered section 191.5, gross vehicular manslaughter while intoxicated, not vehicular manslaughter under section 192, subdivision (c), and pointing to the Supreme Court's decision in *People v. Ortega* (1998) 19 Cal.4th 686, which held grand theft of a vehicle was a lesser included offense of robbery, relying on the long-standing recognition of the law that theft is a lesser included offense of robbery. (*Id.* at p. 695.) Similarly, Klein contends, it has long been held that manslaughter is a lesser included offense of murder.

Klein's argument reads *Sanchez* far too narrowly. The *Sanchez* Court specifically addressed *Ortega* and rejected the

parallel that Klein attempts to draw: "[T]o the extent that our opinion in *Ortega* relied upon an historical practice supporting the general principle that all forms of theft are included within the crime of robbery, the present case also may be distinguished. Although we recognize that historically manslaughter in general has been considered a necessarily included offense within murder, that long and settled tradition has not extended to the more recently enacted forms of vehicular manslaughter that require proof of additional elements." (*Sanchez*, *supra*, 24 Cal.4th at p. 992.) Klein's suggestion that, by referring to "more recently enacted forms of vehicular manslaughter," the Supreme Court was differentiating section 191.5, gross vehicular manslaughter while intoxicated, from other forms of vehicular manslaughter identified in section 192, subdivision (c), is expressly refuted by the Court's statement that its decision "does not turn on a distinction between vehicular manslaughter while intoxicated as defined by section 192 and gross vehicular manslaughter while intoxicated as defined by section 191.5." (*Sanchez*, at p. 992, fn. 4; see *People v. Bettasso*, *supra*, 49 Cal.App.5th at p. 1059 [noting that the Supreme Court in *Sanchez* had explained that the criminal offense defined in section 191.5 was formerly contained in section 192].)

Moreover, it is difficult to fathom the nature of the error, let alone any prejudice, Klein is claiming under the circumstances of this case. The court instructed not only that the various section 192, subdivision (c), vehicular manslaughter offenses were lesser included offenses of gross vehicular manslaughter while intoxicated, but also that, if any juror had a reasonable doubt whether Razo's homicide was murder or manslaughter, that juror must find it to be manslaughter; and if,

in turn, there was a reasonable doubt whether the crime was gross vehicular manslaughter while intoxicated, the juror must find it was the lesser offense of vehicular manslaughter without gross negligence. Thus, as instructed, even without designating the various vehicular manslaughter offenses as lesser included crimes of murder, there was no all-or-nothing issue, one of the principal reasons lesser included instructions are mandatory if substantial evidence supports the conclusion the defendant committed the lesser offense and not the greater. (See *People v. Gonzalez* (2018) 5 Cal.5th 186, 196 [the rule requiring trial courts to instruct on lesser included offenses of the charged crime protects the jury's ""truth-ascertainment function,"" ensuring "'the verdict is no harsher or more lenient than the evidence merits'"]; *People v. Smith* (2013) 57 Cal.4th 232, 239-240 ["'[t]he rule prevents either party, whether by design or inadvertence, from forcing an all-or-nothing choice between conviction of the stated offense on the one hand, or complete acquittal on the other'"].)

In addition, although a defendant cannot be convicted of both an offense and a lesser offense necessarily included within that offense based upon his or her commission of the identical act (*People v. Ortega, supra*, 19 Cal.4th at p. 692),[18] because count 2, gross vehicular manslaughter while intoxicated, was dismissed

---

[18] The *Ortega* Court explained, "[D]espite the seemingly absolute language of section 954 ('the defendant may be convicted of any number of the offenses charged'), there is an exception to the general rule permitting multiple convictions. 'Although the reason for the rule is unclear, this court has long held that multiple convictions may *not* be based on necessarily included offenses.'" (*People v. Ortega, supra*, 19 Cal.4th at p. 692.)

once the jury returned its verdict finding Klein guilty of murder, that issue—the question before the Supreme Court in *Sanchez, supra*, 24 Cal.4th 983—was not presented in this case. (See *id.* at p. 992 ["under the general California standard for determining greater and lesser included offenses, gross vehicular manslaughter while intoxicated should not be treated as a lesser included offense of murder and thus that a defendant may be convicted of both offenses arising out of the same act"].)

In sum, even if vehicular manslaughter were a lesser included offense of implied malice murder, contrary to the reasoning in *Sanchez, supra*, 24 Cal.4th 983 and the holdings of the courts of appeal that have decided the issue, the failure to designate those offenses as such in this case was not prejudicial error.

5. *Remand Is Appropriate for a Determination of Klein's Ability To Pay the Fine, Fee and Assessment Imposed*

Citing *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*) and *People v. Castellano* (2019) 33 Cal.App.5th 485, Klein contends remand is necessary because at sentencing the trial court imposed, without determining his ability to pay, a court operations assessment under Penal Code section 1465.8, a court facilities assessment fee under Government Code section 70373 and a restitution fine under Penal Code section 1202.4, subdivision (b).[19]

In *Dueñas* this court concluded, "[T]he assessment provisions of Government Code section 70373 and Penal Code

---

[19]     This court's opinion in *Dueñas, supra*, 30 Cal.App.5th 1157 was filed on January 8, 2019, the same day as Klein's sentencing hearing.

25

section 1465.8, if imposed without a determination that the defendant is able to pay, are . . . fundamentally unfair; imposing these assessments upon indigent defendants without a determination that they have the present ability to pay violates due process under both the United States Constitution and the California Constitution." (*Dueñas, supra*, 30 Cal.App.5th at p. 1168; accord, *People v. Belloso* (2019) 42 Cal.App.5th 647, 654-655 (*Belloso*), review granted Mar. 11, 2020, S259755.) A restitution fine under Penal Code section 1202.4, subdivision (b), however, "is intended to be, and is recognized as, additional punishment for a crime." (*Dueñas*, at p. 1169; accord, *Belloso*, at p 655.) And Penal Code section 1202.4, subdivision (c), expressly provides a defendant's inability to pay a restitution fine may not be considered a "compelling and extraordinary reason" not to impose the statutory minimum fine. Accordingly, as held in *Dueñas*, to avoid a serious constitutional question if a restitution fine were to be imposed on an indigent defendant, "the court must stay the execution of the fine until and unless the People demonstrate that the defendant has the ability to pay the fine." (*Dueñas*, at p. 1172; accord, *Belloso*, at p. 655.)[20]

The People contend, using an Eighth Amendment, rather than due process clause analysis, the restitution fine was not grossly disproportional to the gravity of Klein's offense and, therefore, was not unconstitutionally excessive. They also assert,

---

[20] The following issues are presently pending before the Supreme Court in *People v. Kopp* (2019) 38 Cal.App.5th 47, review granted November 13, 2019, S257844: "Must a court consider a defendant's ability to pay before imposing or executing fines, fees, and assessments? If so, which party bears the burden of proof regarding defendant's inability to pay?"

as a punitive fine, it did not violate due process.  And while conceding a due process violation in imposition of the nonpunitive court operations assessment and court construction fee without any inquiry into Klein's ability to pay, they argue the error was harmless beyond a reasonable doubt because Klein will be able to earn the relatively small amounts involved while in prison.

In *Belloso* we rejected the contention a constitutional challenge to imposition of fines and fees on an indigent defendant should be reviewed under an excessive fines analysis instead of using a due process framework and reconfirmed the holding in *Dueñas* that imposition of restitution fines upon an indigent defendant raises serious due process concerns.  (*Belloso, supra*, 42 Cal.App.5th at pp. 655, 660.)  The People present no persuasive reason for us to reconsider our analysis.

As for the People's harmless error argument, on the limited record before us, we are unable to conclude beyond a reasonable doubt that Klein's future earning capacity demonstrates his ability to pay the various assessments imposed.

In light of Klein's burden to prove his inability to pay (*People v. Castellano, supra*, 33 Cal.App.5th at p. 490), we remand the matter to the trial court to give Klein an opportunity to request an ability-to-pay hearing and to present evidence of his inability to pay the fine, fee and assessment the trial court imposed.

## DISPOSITION

The judgment is affirmed.  We remand for the trial court to allow Klein to request a hearing and present evidence demonstrating his inability to pay the court operations assessment, the court construction fee and the restitution fine.  If Klein demonstrates his inability to pay the assessment and fee, the trial court must strike them.  If the trial court determines Klein does not have the ability to pay the restitution fine, it must stay execution of the fine.


PERLUSS, P. J.


We concur:


SEGAL, J.


FEUER, J.