Filed 1/26/24  P. v. Monroe CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ALAYNA MARIE MONROE,<br><br>    Defendant and Appellant. | 2d Crim. No. B319165<br>(Super. Ct. No. 2017003525)<br>(Ventura County) |

Alayna Marie Monroe appeals from the judgment after she was found guilty at a court trial of misdemeanor vehicular manslaughter.  She contends the trial court lacked jurisdiction to find her guilty of this lesser included offense after acquitting her of the greater offense pursuant to Penal Code[1] section 1118.  She also contends the trial court erred when it considered evidence of alcohol consumption, excluded expert testimony, and precluded her from presenting evidence of a sudden emergency.  We affirm.

---

[1] All undesignated statutory references are to the Penal Code.

FACTUAL AND PROCEDURAL HISTORY

Alayna Monroe (Monroe) and her wife, Heather Monroe,[2] celebrated New Year's Eve in Hollywood. After they left the nightclub, Monroe began driving them home to Simi Valley in their Toyota Scion. Heather slept on the reclined front passenger seat.

Monroe exited the 118 freeway at Sycamore. As she drove southbound on Sycamore, she failed to stop for a red light and entered the intersection with Cochran Street. She collided with a Nissan Maxima that had a green light and was traveling eastbound on Cochran. The front of the Scion hit the driver's side of the Maxima, injuring its driver and passenger. Both vehicles suffered major damage.

The Scion was traveling at 38 miles per hour at the time of the collision. It left no skid marks or brake marks. A bystander removed Heather from the vehicle.

Heather suffered broken ribs, damage of the spinal cord where it enters the skull and tearing of the aorta from the heart. The parties stipulated she died from blunt force trauma in connection with the collision.

Detective Corey Baker testified Monroe's breath smelled of alcohol, her eyes were bloodshot and watery, and she displayed horizontal gaze nystagmus (the involuntary jerking of one's eyes when gazing to the side). Monroe stated she drank champagne and a double shot of whiskey at the nightclub.

About an hour and forty minutes after the collision, Monroe gave breath tests showing 0.078 and 0.077 percent alcohol. A blood sample taken about half an hour later had an alcohol

_____

[2] To avoid confusion, we refer to Heather by her first name. No disrespect is intended.

concentration of 0.082 percent.  Based on the time of drinking, driving pattern, objective symptoms, and test results, a forensic scientist calculated her blood alcohol level at the time of the collision as 0.114 percent, and concluded she would be impaired while driving.

During his contact with Monroe on the day of the crime, Detective Baker did not have probable cause to believe she was under the influence.  But after he spoke to the forensic scientist and reviewed the blood alcohol results, Baker formed the opinion she had been driving under the influence of alcohol at the time of the collision.

The information charged Monroe with vehicular manslaughter while intoxicated, without gross negligence (§ 191.5, subd. (b)).[3]  It also alleged that Monroe inflicted great bodily injury (§ 1192.7, subd. (c)(8)) and proximately caused bodily injury to more than one victim (the occupants of the other vehicle) (Veh. Code, § 23558).  The parties waived jury trial and the case was tried to the court.

At the conclusion of the prosecution's case, the court tentatively granted the section 1118 motion for acquittal.  The court stated it had a reasonable doubt as to whether Monroe was under the influence at the time of the collision based on whether

---

[3] The charged offense is an alternative misdemeanor-felony ("wobbler") offense (§ 191.5, subds. (b) & (c)(2); see § 17, subds. (a) & (b)), but for simplicity we refer to it as "felony vehicular manslaughter."  We refer to the lesser included offense, vehicular manslaughter without gross negligence and without an allegation of intoxication (§ 192, subd. (c)(2)) as "misdemeanor vehicular manslaughter" because it is a straight misdemeanor.  (§ 193, subd. (c)(2); see § 17, subd. (a).)

3

her body had absorbed the alcohol.  The court later granted the section 1118 motion as to the felony and denied it as to the lesser included offense of misdemeanor vehicular manslaughter (§ 192, subd. (c)(2)).

After the defense case, the court found Monroe guilty of the misdemeanor lesser included offense.  The court placed Monroe on probation for one year with terms including 180 days in jail.  The court stayed the jail time pending appeal.

DISCUSSION

*Jurisdiction to find lesser offense*

Monroe contends the court had no jurisdiction to find her guilty of a lesser offense after acquitting her of felony vehicular manslaughter.  We disagree.

In a court trial, section 1118 requires the court to acquit the defendant of "one or more of the offenses charged" if the prosecution has not proven the offense in its case-in-chief.

The trial court here confirmed that it acquitted Monroe only of the charged offense, not the lesser included offense, and therefore retained jurisdiction.  When the court tentatively granted the section 1118 motion, the prosecutor argued "the 1118 analysis doesn't end with a yes, no," but "turns to the lesser includeds" [*sic*].  The court stated it was "unpersuaded to deviate from [its] tentative ruling on the main charge, not the lesser included."  The prosecution argued that if the section 1118 motion were granted, it "would then leave us with the issue of the lesser included."  The court agreed.  Defense counsel acknowledged "we're now going to have a misdemeanor case."  The court granted the section 1118 motion "as to the felony count and not as to the lesser included."

When the court grants an acquittal at the end of the

People's case, it retains jurisdiction to substitute a lesser included offense for the trier of fact's consideration. (*People v. Powell* (2010) 181 Cal.App.4th 304, 311 (*Powell*).) *Powell* allowed the jury to convict for the lesser offenses of misdemeanor driving under the influence of alcohol after the court granted a section 1118.1 motion acquitting the defendant of the charged wobbler offenses of driving under the influence causing injury. (*Powell*, at pp. 307, 310-311.) As here, the trial court in *Powell* stated its intention to proceed on the lesser offenses "[a]s part of the same colloquy" in which it found the evidence insufficient for the charged offenses. (*Id.* at p. 313.)[4]

Monroe contends that *Powell* is inapposite because the prosecution there inquired about amending the information to add the lesser included offenses. (*Powell*, *supra*, 181 Cal.App.4th at p. 310.) But it is not necessary to amend an accusatory pleading to add a lesser included offense. "[T]he stated charge notifies the defendant, for due process purposes, that he must also be prepared to defend against any lesser offense necessarily included therein, even if the lesser offense is not expressly set forth in the indictment or information." (*People v. Birks* (1998)

---

[4] Because *Powell* was a jury trial, section 1118.1 applied. It requires the court to acquit at the end of the People's case if the evidence is insufficient under the appellate substantial evidence standard. (*People v. Cuevas* (1995) 12 Cal.4th 252, 261.) The corresponding provision for a court trial is section 1118, which requires acquittal at the end of the People's case if the court is not convinced of guilt beyond a reasonable doubt. (*In re Andre G.* (1989) 210 Cal.App.3d 62, 66.) The distinction between the two sections is not relevant to whether the court has jurisdiction to convict of a lesser offense after an acquittal on the greater offense.

19 Cal.4th 108, 118.) Following a successful motion for acquittal of a charged offense, "amendment of an accusatory pleading is not necessary in order to convict a defendant of a necessarily lesser included offense." (*People v. Meyer* (1985) 169 Cal.App.3d 496, 507.)

Monroe also argues that *Powell* does not apply because the section 1118.1 motion there was granted for only two counts and the court retained jurisdiction to try additional charges pleaded in the information. (*Powell, supra,* 181 Cal.App.4th at p. 310.) But the Court of Appeal did not rely on that circumstance when it permitted trial on the lesser included offenses. Instead, it ruled that the trial court was not prohibited "from taking even a single breath between indicating an intent to dismiss and allowing the prosecution to proceed" on lesser included offenses. (*Id.* at p. 313.) Here, as in *Powell*, the trial court acknowledged the prosecution could proceed on the lesser included offense when it acquitted Monroe of the charged offense. Because the court informed the parties the acquittal was limited to the greater offense and did not apply to the lesser included offense, jurisdiction was proper.

*Evidence of alcohol consumption*

Monroe contends the trial court erred when, after acquitting her of felony vehicular manslaughter, it denied her motion in limine to exclude evidence she consumed alcohol. We review de novo Monroe's claim that admission of the evidence was barred by issue preclusion and collateral estoppel. (*People v. Henley* (2022) 85 Cal.App.5th 1003, 1017; *Johnson v. GlaxoSmithKline, Inc.* (2008) 166 Cal.App.4th 1497, 1507.)

Misdemeanor vehicular manslaughter (§ 192, subd. (c)(2)) requires proof that (1) while driving a vehicle, the defendant

6

committed a misdemeanor or infraction, or committed "a lawful act in an unlawful manner" (i.e., with ordinary negligence); (2) the misdemeanor, infraction, or otherwise lawful act "was dangerous to human life under the circumstances of its commission"; and (3) it "caused the death of another person." (CALCRIM No. 593; *People v. Bussel* (2002) 97 Cal.App.4th Supp. 1, 6, 8-10.) Felony vehicular manslaughter additionally requires proof of driving under the influence or with a blood alcohol level of 0.08 percent or more. (*People v. Lopez* (2012) 55 Cal.4th 569, 574, fn. 1.)

The prosecution's theory was that Monroe was negligent per se by running a red light (Veh. Code, § 21453, subd. (a)) or, alternatively, by "ordinary negligence." The trial court ruled that alcohol consumption was relevant to Monroe's "general caution that night" and "general willingness to be careful."

In our view, whether the trial court had a reasonable doubt that Monroe was under the influence of alcohol for purposes of felony vehicular manslaughter did not preclude it from considering alcohol consumption as part of the evidence regarding her negligence and running a red light. This is not a case "where all of the essential elements of the crime of which the defendant was acquitted are identical to some or all of the essential elements of the crime of which he was convicted." (*People v. Hamilton* (1978) 80 Cal.App.3d 124, 130.)

Evidence of alcohol use may be relevant to the negligence element of vehicular manslaughter, even when the defendant is not charged with vehicular manslaughter while intoxicated. (*People v. Ho* (2018) 26 Cal.App.5th 408, 415.) In *Ho*, the trial court properly admitted evidence the defendant consumed alcohol and drugs the night before the accident in a prosecution for

vehicular manslaughter with gross negligence (§ 192, subd. (c)(1)).  The evidence there was relevant to gross negligence, even though no alcohol registered in the defendant's system 95 minutes after the fatal collision, and the police officer noticed no signs of intoxication.  (*Ho*, at pp. 411-415.)  Here, Monroe had alcohol in her system hours after the crash, which was relevant to whether driving without stopping for the red light was dangerous to human life.  (See *People v. Bennett* (1991) 54 Cal.3d 1032, 1038 [trier of fact should consider level of intoxication regarding negligent driving].)

Collateral estoppel applies to "issues argued and decided in prior proceedings" and "the decision in the former proceeding must be final and on the merits."  (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341.)  The doctrine applies to " 'an *issue* " 'necessarily decided in [prior] litigation . . . in a subsequent lawsuit.' " ' "  (*People v. Quarterman* (2012) 202 Cal.App.4th 1280, 1288.)  The acquittal of felony vehicular manslaughter here did not preclude evidence of intoxication in the same trial.

*People v. Henley*, *supra*, 85 Cal.App.5th 1003, upon which Monroe relies, is inapposite.  There, in ruling on a petition for resentencing pursuant to section 1172.6, the finding that defendant personally used a firearm was erroneous because it was contrary to the jury's not-true finding on the allegation of gun use.  (*Henley*, at p. 1007.)  But here, a reasonable doubt whether Monroe met the level of intoxication necessary for felony vehicular manslaughter was not inconsistent with the red light violation.  As the court noted, alcohol consumption was relevant to Monroe's "general caution that night" and "general willingness to be careful."

*Expert testimony*

Monroe contends the trial court erroneously excluded the testimony of her biomedical engineering expert, Jamie R. Williams, Ph.D., and her paramedic expert, John Everlove, on the issue of guilt. "A trial court has broad discretion in determining whether to admit expert testimony and its ruling will be reversed on appeal only where the record reveals an abuse of discretion." (*People v. Ramos* (2004) 121 Cal.App.4th 1194, 1205.) There was no abuse of discretion here.

Dr. Williams testified that if Heather had been sitting upright, she would not have sustained the fatal injuries. She concluded, however, that "if there was no collision . . . I would not expect her to have sustained these injuries."

Everlove testified the standard of care for removing a patient from a vehicle to avoid neurological harm would include using an immobilization collar, backboard, and the "jaw thrust method" of pushing the jaw upward independent of the rest of the head. But Everlove did not claim the bystander's conduct caused Heather's injuries.

After hearing the proffered testimony of Dr. Williams and Everlove, the court ruled, "nothing in [their] testimony supports a finding that the defendant's conduct was not a substantial factor in causing the victim's demise; therefore, the testimony, while admissible on issues of possible mitigation, is not admissible on the issue of defendant's criminal liability."

Dr. Williams's testimony was properly excluded because it did not negate Monroe's negligence as a cause of death. The defendant's act need not be the sole cause of death, but need only be a substantial, non-trivial factor in causing the death. (CALCRIM No. 620; *People v. Catlin* (2001) 26 Cal.4th 81, 155-

9

156.) "This is true even if the victim's preexisting physical condition also was a substantial factor causing death." (*Catlin*, at p. 155; *People v. Wattier* (1996) 51 Cal.App.4th 948, 953 [victim's failure to wear seat belt irrelevant to vehicular manslaughter].) Here, Monroe's negligent driving through the red light caused the collision, which was a substantial factor in Heather's death, even if Heather's reclining position was also a factor. Heather's reclined position would not have resulted in her death if the trip had reached its destination without the collision.

Nor was Everlove's testimony relevant to guilt. " 'If a person inflicts a dangerous wound on another, it is ordinarily no defense that inadequate medical treatment contributed to the victim's death.' " (*People v. Scott* (1997) 15 Cal.4th 1188, 1215.) The trial court properly excluded Everlove's testimony on the issue of guilt because it did not support a conclusion that the collision was an insubstantial factor in causing Heather's death.

We reject Monroe's contention that exclusion of the expert testimony denied her " 'a meaningful opportunity to present a complete defense.' " (*Crane v. Kentucky* (1986) 476 U.S. 683, 690 [error to exclude testimony of circumstances of confession].) The purported defense here is that Heather's death was not "reasonably foreseeable." (See *People v. Nicolas* (2017) 8 Cal.App.5th 1165, 1175.) But Dr. Williams's testimony did not establish that Heather's death was an unforeseeable consequence of Monroe driving through a red light into an intersection at 38 miles per hour, regardless of Heather's reclining position. And Everlove's negligent treatment of the injury (if that occurred) " 'is a foreseeable intervening cause' " that did not negate Monroe's conduct as a cause of death. (*People v. McGee* (1947) 31 Cal.2d 229, 240.)

Monroe also makes an undeveloped claim that exclusion of the evidence undermined the " ' "integrity of the fact-finding process." ' " (*Chambers v. Mississippi* (1973) 410 U.S. 284, 295 [cross-examination and impeachment of witness denied].)  But the Supreme Court has "never questioned the power of States to exclude evidence through the application of evidentiary rules that themselves serve the interests of fairness and reliability—even if the defendant would prefer to see that evidence admitted." (*Crane v. Kentucky*, *supra*, 476 U.S. at p. 690.)  The proffered testimony was not relevant to show the collision was not "a substantial factor" in causing the death (*People v. Catlin*, *supra*, 26 Cal.4th at p. 155), or any other fact relevant to guilt.

*Sudden emergency doctrine*

Monroe contends the "exclusion" of the sudden emergency doctrine violated the Sixth and Fourteenth Amendments to the United States Constitution.  We find no error.

" 'A person who, without negligence on [their] part, is suddenly confronted with unexpected and imminent danger, either to [themselves] or to others, is not expected, nor required, to use the same judgment and prudence that is required of [them] in the exercise of ordinary care, in calmer and more deliberate moments.  [Their] duty is to exercise only the care that an ordinarily prudent person would exercise if confronted with the same unexpected danger, under the same circumstances.' " (*People v. Boulware* (1940) 41 Cal.App.2d 268, 269, italics omitted [driver swerved to avoid collision]; CALCRIM No. 593.)

Monroe contends she was confronted with a "sudden emergency" because the victim regurgitated prior to impact.  The evidence established the victim vomited in the car, but not when it occurred.  Monroe identifies nothing in the record to show her

11

attention was diverted by the regurgitation. The court concluded it was not a reasonable explanation for the collision because Monroe never mentioned it during her "long and detailed interview" with police. Instead, the only explanation she gave for the accident was a claim the other car turned in front of her.

Monroe contends she was prevented from testifying about the cause of the accident. But Monroe waived her right to testify and the trial court found her waiver to be knowing, intelligent, and voluntary. Monroe said she did not testify based on the court's ruling allowing evidence of her alcohol consumption. Because we conclude the trial court's ruling regarding evidence of drinking was not erroneous, Monroe's tactical decision to not testify did not "prevent" her from testifying.

DISPOSITION

The judgment is affirmed and order staying the jail term is vacated.

<u>NOT TO BE PUBLISHED.</u>

BALTODANO, J.

We concur:

YEGAN, Acting P.J.

CODY, J.

12

David R. Worley, Judge

Superior Court County of Ventura
_____

Richland & Associates and Felipa R. Richland for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and David F. Glassman, Deputy Attorneys General, for Plaintiff and Respondent.